# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERLIN EVER MENCIAS AVILA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-02135-TSC |
| | ) | |
| METROPOLITAN POLICE DEP'T | ) | |
| DETECTIVE MATTHEW DAILEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Metropolitan Police Department (MPD) Detective Matthew Dailey moves this Court for summary judgment on all claims in Plaintiff's Second Amended Complaint and opposes Plaintiff's Motion for Partial Summary Judgment.  *See* Fed. R. Civ. P. 56 and LCvR 7(h).  Specifically:

1. Detective Dailey is entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim because Detective Dailey was not the prosecuting authority for the underlying criminal investigation, did not have the unilateral legal authority to release Plaintiff's vehicle, and could have risked sanctions under Super. Ct. Crim. R. 16 for failing to preserve evidence for inspection by the future criminal defendant;

2. Detective Dailey is entitled to judgment as a matter of law on Plaintiff's Fifth Amendment claim because Plaintiff was not entitled to pre-deprivation process and did not avail himself of available post-deprivation remedies; and

3. Detective Dailey is entitled to qualified immunity with respect to both claims.

Detailed grounds for this motion are set forth in the accompanying memorandum, along with Defendant's Statement of Undisputed Facts, Defendant's Response to Plaintiff's Statement of Undisputed Material Facts, and Defendant's proposed order.

Defendant has not sought Plaintiff's consent to the relief requested because this is a dispositive motion. *See* LCvR 7(m).


October 12, 2016                              Respectfully Submitted,


                                             KARL A. RACINE
                                             Attorney General for the District of Columbia

                                             GEORGE C. VALENTINE
                                             Deputy Attorney General
                                             Civil Litigation Division

                                             */s/ Chad Copeland*
                                             CHAD COPELAND [982119]
                                             Chief, Civil Litigation Division Section II

                                             */s/ William J. Chang*
                                             WILLIAM J. CHANG [1030057]
                                             Assistant Attorney General
                                             441 Fourth Street, NW
                                             Suite 630 South
                                             Washington, D.C. 20001
                                             (202) 724-6646
                                             (202) 741-0667(fax)
                                             william.chang@dc.gov

                                             *Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ERLIN EVER MENCIAS AVILA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:15-cv-02135-TSC |
| | ) |
| METROPOLITAN POLICE DEP'T | ) |
| DETECTIVE MATTHEW DAILEY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Defendant Metropolitan Police Department (MPD) Detective Matthew Dailey moves this Court for summary judgment on all claims in Plaintiff's Second Amended Complaint and opposes Plaintiff's Motion for Partial Summary Judgment.  Fed. R. Civ. P. 56; LCvR 7(h). Detective Dailey did not unreasonably seize Plaintiff's property under the Fourth Amendment, nor did he deprive Plaintiff of procedural due process under the Fifth Amendment.  Moreover, Detective Dailey is entitled to qualified immunity with respect to both claims because he did not violate any "clearly established" Fourth or Fifth Amendment rights.  *See Lashe v. Lemke*, 786 F.3d 1, 5 (D.C Cir. 2015) ("In some cases, it is easier for a court to see that the claimed right, whether it exists or not, is by no means 'clearly established.'" (citing *Pearson v. Callahan*, 555 U.S. 223, 237 (2009))).

**FACTUAL BACKGROUND**

On September 6, 2014, just before 9:30 p.m., a man committed an assault with a deadly weapon (ADW) on the sidewalk in front of El Torogoz, a restaurant located at 4231 9th Street NW, Washington, D.C. 20011.  Def.'s Statement of Undisputed Facts (SOUF) ¶ 1.  The assailant

brandished a knife and threw metal patio furniture at people, one of whom sustained a large laceration to his forehead and lost several teeth.  SOUF ¶ 2.  The assailant fled in a white van driven by Plaintiff Mencias.   SOUF ¶ 3.   Defendant Dailey was the lead MPD detective responsible for investigating this ADW.  SOUF ¶ 4.  Fourteen months later, after a grand jury investigation, the United States Attorney's Office for the District of Columbia (USAO) closed its investigation into the ADW.  SOUF ¶ 5.

To begin, Plaintiff and the soon-to-be assailant went to El Torogoz after working a construction project.   SOUF ¶ 6.   At about 9:27 p.m., Mrs. Coralia Ventura, who owns El Torogoz with her husband, asked a male and female patron to leave the restaurant because she believed they were doing something inappropriate in the bathroom.  SOUF ¶ 7.  The man (Luis), wearing an orange shirt, began to argue with Mrs. Ventura in the dining room.  *Id*.  Mrs. Ventura gestured Luis to follow her outside, and he followed.  *Id*.  Plaintiff, wearing a white shirt, was standing at the end of the bar near the bathroom with a few other men.  *Id*.  At about 9:28 p.m., after guzzling down a bottle of beer, Plaintiff exchanged cash for a new bottle.   SOUF ¶ 8. About thirty seconds later, Plaintiff and others noticed a commotion and hurried outside.  SOUF ¶ 9.

The footage from the outdoor surveillance cameras depicts Luis yelling at Mrs. Ventura.[1] SOUF ¶ 10.  Mr. Ventura, in a white chef's coat, walked outside from the kitchen's side door, appearing intent on an unrelated matter until he saw Luis yelling at his wife.  SOUF ¶ 11.  Luis then moved across the patio towards Mr. Ventura.  *Id.*  Plaintiff stood watching on the patio near the doorway while Luis brandished a knife at Mrs. Ventura, Mr. Ventura, and another man who

---

[1]  It is unclear why Plaintiff's counsel submitted an affidavit reciting what he saw on the surveillance footage, as opposed to submitting the footage itself.  What is clear, however, is that Plaintiff's recitation of the altercation changed dramatically as discovery progressed in this matter.  *Compare* Compl. [1] ¶¶ 20-24 *with* 2d Am. Compl. [21] ¶¶ 18-21.

approached and appeared protective of the Venturas.  SOUF ¶ 12.  Seconds later, Luis threw a stanchion at the approaching man, who dodged it.  SOUF ¶ 13.  This prompted Plaintiff to hurry around the patio towards Luis.  SOUF ¶ 14.  Luis then threw a metal patio chair, striking the stanchion's intended target in the face and causing Luis to stumble to the ground.  SOUF ¶ 15. Luis got to his feet, and Plaintiff ran between him and the now-bloodied man while Mr. Ventura, who had grabbed an umbrella pole, stood in a defensive posture in front of his wife.  SOUF ¶ 16.

With Plaintiff by his side, Luis grabbed a metallic object from Plaintiff's van and scraped it across the sidewalk which created sparks.  SOUF ¶ 17.  Plaintiff walked around to the driver's side of his white van, moving beyond the camera frame.  SOUF ¶ 18.  Luis opened the passenger's door to Plaintiff's van, retrieved an open case of beer, and slammed the case onto the sidewalk.  SOUF ¶ 19.  He then picked up a full can from the ground and threw it back down, causing the can to burst before he climbed into the van.  SOUF ¶ 20.  Moments later, Plaintiff drove Luis away from the restaurant, and the two headed northbound on 9th Street NW.  SOUF ¶ 21.

Plaintiff parked his van a little over a mile away, near Ache Lounge (441 Kennedy Street NW).  SOUF ¶ 22.  He entered Ache Lounge and did not notice that Luis went somewhere else. SOUF ¶ 23.

Members of MPD's Fourth District responded to El Torogoz to investigate the ADW. SOUF ¶ 24.  The first responding officers interviewed witnesses.  SOUF ¶ 25.  Defendant Detective Dailey arrived on the scene with Detective William Xanten, and they joined the officers in interviewing witnesses and in reviewing security camera footage.  SOUF ¶ 26.

One waitress reported that as she tried to photograph Plaintiff's van, Luis jumped out and yelled, "I know where to find you, I [am] going to come back for you," before driving away with

Plaintiff.  SOUF ¶ 27.  She memorized the van's license plate number, and witnesses described the van as white, with the name "D Street Construction" on its side.  SOUF ¶ 28.  Officer Richard Geiger broadcasted the look-out for the van over the radio, and MPD Officers then located the van on the 400 block of Kennedy Street NW.  SOUF ¶ 29.  Officers obtained a copy of Plaintiff's driver's license photograph through his vehicle registration information.  SOUF ¶ 30.  Mrs. Ventura positively identified Plaintiff's photograph as the driver who transported the assailant away from the scene of the crime.  SOUF ¶ 31.

At approximately 11:50 p.m., MPD Officers found Plaintiff on foot in the 800 block of Kennedy Street NW.  SOUF ¶ 32.  Detective Dailey noted in his investigative case file that Plaintiff appeared heavily intoxicated.  SOUF ¶ 33.  He also informed Plaintiff that MPD needed to speak with him about the altercation at El Torogoz.  SOUF ¶ 34.  According to Detective Dailey, Plaintiff provided no information as to his Luis' identity or whereabouts, but asserted that the owner of El Torogoz and other patrons attacked his friend.  SOUF ¶ 35.  Detective Dailey asked Plaintiff to identify his friend so the police could hear his side of the story, to which Plaintiff responded, "I will never tell you who my friend is; you will have to find him."  SOUF ¶ 36. Detective Dailey informed Plaintiff that MPD was seizing his van as evidence and transporting it to the Fourth District.  SOUF ¶ 37.

On September 11, 2014, Plaintiff went MPD's Fourth District Substation (750 Park Road NW).  SOUF ¶ 38.  He spoke to Officer Justin Jordan about having his van released.  SOUF ¶ 39.  Officer Jordan explained that if Plaintiff knew information that could help close the case, sharing it with law enforcement would further his interest in getting his van released.  SOUF ¶ 40.  Plaintiff agreed to be interviewed, and he and Officer Jordan reconvened at the Fourth District Station Detectives' Office (6001 Georgia Avenue NW).  SOUF ¶ 41.  Plaintiff's

interview was videotaped, with audio recorded.  SOUF ¶ 42.  Plaintiff told his interviewers that he only knew the suspect by the name "Luis," and he met Luis the same day as the crime, picking him up in the morning from a Home Depot on Rhode Island Avenue NE as a day-laborer.  SOUF ¶ 43.  Detective Dailey had no involvement with the September 11, 2014 interview.

On September 18, 2014, Detective Dailey sent a draft search warrant for Plaintiff's van to Assistant U.S. Attorney (AUSA) John Giovannelli, Deputy Chief of the Superior Court Felony Major Crimes Trial Section.  SOUF ¶ 44.  AUSA Giovannelli approved the warrant.  SOUF ¶ 45.  The next day, a D.C. Superior Court magistrate judge signed the warrant. SOUF ¶ 46.  On September 23, 2014, MPD officers executed the search warrant on Plaintiff's van.  SOUF ¶ 47.  The van's passenger compartment contained a backpack that appeared to belong to someone other than Plaintiff, with a Honduran passport issued to Josue Nahun Díaz-Matute and other personal items inside.  SOUF ¶ 48.  MPD Officers seized the Honduran passport, four cans of Heineken beer, and a knife.  SOUF ¶ 49.  Detective Dailey participated in this search.

On March 3, 2015, Detective Dailey called Plaintiff after receiving a voicemail message from him.  SOUF ¶ 50.  According to Detective Dailey, he explained to Plaintiff that his van was evidence because it was used in the commission of a crime that was under investigation.  SOUF ¶ 51.  He also explained to Plaintiff that the van could only be released with the USAO's approval.  SOUF ¶ 52.  Detective Dailey knew that the AUSA assigned to this case was leading the criminal investigation by grand jury and that Plaintiff's van remained classified as evidence under the prosecutor's discretion.  SOUF ¶ 53.  On March 4, 2015, AUSA Christopher Bruckmann e-mailed Detective Dailey a subpoena for Plaintiff to appear and testify before the grand jury.  SOUF ¶ 54.  Detective Dailey served Plaintiff a subpoena that indicated an

appearance date in March 2015, but the USAO later rescheduled this date for May 2015.  SOUF ¶ 55.

In May 2015, AUSA Kara Traster replaced AUSA Bruckmann as the prosecutor.  SOUF ¶ 56.  AUSA Traster consulted with Detective Dailey throughout the grand jury investigation.  SOUF ¶ 57.  On September 15, 2015, Detective Dailey e-mailed AUSA Traster for an update on their shared cases, including a specific reference to the ADW at El Torogoz.  SOUF ¶ 58.  AUSA Traster responded, "Can we talk tomorrow [morning]?  I *definitely want to move forward* with these cases."  SOUF ¶ 59 (emphasis added).

On November 19, 2015, AUSA Traster e-mailed Detective Dailey: "Re the vehicle in the ADW case.  Can you send me a PD-81C to sign off?  Per John Giovanelli, *we've closed out the case and the USAO-DC will sign off on releasing the car*."  SOUF ¶ 62 (emphasis added).  Detective Dailey did as he was told.  On November 27, 2015, he e-mailed AUSAs Traster and Giovanelli the property release Form PD 81-C so that USAO could certify that it no longer needed Plaintiff's property as evidence for the prosecution of the ADW.  SOUF ¶ 63.  He also attached a draft warrant for Plaintiff's arrest, suggesting: "He is an accessory to the crime to include obstructed justice after the fact…. Can we go this way?"  SOUF ¶ 64.  AUSA Giovanelli declined to prosecute this charge.  SOUF ¶ 65.

Detective Dailey has been a member of MPD for over fifteen years and a detective in the Fourth District for the past ten.  SOUF ¶ 66.  He is responsible for investigating violent assaults and robberies, as well as responding to all Part 1 offenses.  SOUF ¶ 67.  In investigating these violent crimes, Detective Dailey regularly seizes property as evidence.  SOUF ¶ 68.  When seized property is no longer needed as evidence in a criminal case, Detective Dailey obtains the signature of approval from the appropriate prosecuting authority on MPD's property release

form, the PD 81-C.  SOUF ¶ 69.  This process confirms that the USAO has no objection to the release and that "said property is not needed to be retained as evidence."  SOUF ¶ 70.  Detective Dailey's final responsibility is to transmit the completed PD 81-C to the Fourth District Property Officer.  SOUF ¶ 71.  Detective Dailey has no further involvement with the dispositions of property seized during his investigations.  SOUF ¶¶ 72-73.

## LEGAL STANDARD

### I.    <u>Motions for Summary Judgment Under Fed. R. Civ. P. 56</u>

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted).

The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quotation marks omitted).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

## II.    <u>Qualified Immunity</u>

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* (citing *al-Kidd*, 563 U.S. at 740–41).  This "does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. 741 (citations omitted).  Hence, "all but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Komongnan v. U.S. Marshals Serv.*, 471 F. Supp. 2d 1, 6 (D.D.C. 2006).

"An official protected by qualified immunity enjoys '*immunity from suit* rather than a mere defense to liability,' which is 'effectively lost if a case is erroneously permitted to go to trial.'" *Stoddard v. Wynn*, 68 F. Supp. 3d 104, 114 (D.D.C. 2014) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Therefore, "questions of immunity are matters of law for a court to decide as early in the proceedings as possible." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 200–201 (2001)).

**ARGUMENT**

## I.    <u>Detective Dailey is Entitled to Judgment as a Matter of Law on Plaintiff's Fourth Amendment Claim.</u>

Plaintiff quizzically imputes the actions of prosecutors at the United States Attorney's Office and other MPD personnel – none of whom are named as defendants – onto Detective Dailey for purposes of this lawsuit.  This is inappropriate under 42 U.S.C. § 1983.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. CONST. amend. IV.  The "touchstone of this Amendment is reasonableness." *United States v. Askew*, 482 F.3d 532, 538 (D.C. Cir. 2007).  "Whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case."  *United States v. Proctor*, 489 F.3d 1348, 1352 (D.C. Cir. 2007) (quotations, citations, and brackets omitted); *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.") (quotations and citations omitted).

Without question, Detective Dailey's initial seizure and search of Plaintiff's automobile were objectively reasonable.  With respect to the duration of the seizure, Plaintiff cannot seek Fourth Amendment liability against the Detective because he was not responsible for prosecuting the underlying ADW, and thus did not have the legal authority to control the duration of the seizure.

## A.    Detective Dailey's Seizure and Search of Plaintiff's Van Were Objectively Reasonable.

Detective Dailey seized Plaintiff's property with ample probable cause to associate it with criminal activity.  As Plaintiff suggests, *see* Pl. Mot. for Partial Summ. J. (Pl. Mot.) 13, Detective Dailey had probable cause to seize Plaintiff's vehicle because its "incriminating character [was] 'immediately apparent.'"  *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 69 (1992) (quoting *Horton v. California*, 496 U.S. 128, 136–37 (1990)).  Plaintiff used his van to drive the assailant away from the scene of a violent crime; without its seizure, "the opportunity to search [would be] fleeting since a car is readily movable." *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974)

9

(quoting *Chambers v. Maroney*, 399 U.S. 42, 50–51 (1970)).  "This is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened." *Id.*  The reasonableness of the seizure is not at issue.

Similarly, Detective Dailey's search of Plaintiff's van was objectively reasonable.  The search warrant was based on probable cause, signed by a neutral magistrate, and described with particularity "the place to be searched and the persons or things to be seized."  U.S. CONST. amend. IV; *United States v. Spencer*, 530 F.3d 1003, 1006 (D.C. Cir. 2008) ("[W]e give great deference to the issuing judge's probable cause determination.") (quotations and citation omitted); Sep. 19, 2014 Search Warrant and Application in Support.  The reasonableness of the search is also not at issue.

## B.   Detective Dailey's Actions Following the September 23, 2014 Search Were Objectively Reasonable.

Plaintiff believes that "neither the van nor the tools had *any* evidentiary value" after Detective Dailey's September 23, 2014 search of Plaintiff's van.  Pl.'s Mot. 14 (emphasis added).  He also contends that the seizure of his vehicle became unreasonable as a result of its duration. *Id.*  These arguments lack merit.

To begin, the September 23, 2014 search of Plaintiff's vehicle did not cleanse it and its contents of all evidentiary value.  Without further investigation, neither Detective Dailey nor the USAO could reasonably determine the evidentiary value of the remaining items.  *See, e.g.*, Dailey Dep. 50:1-7 ("We needed to speak with [Plaintiff] in reference to who was in the van and what belonged to him and what didn't belong to him.  So we didn't know what was evidence and what wasn't ….").  The items that the Detective did seize during the September 23, 2014 search (*i.e.*, the knife, beer cans, and Honduran passport) were items specifically described by

eyewitnesses to the ADW (a knife), depicted in the restaurant's video surveillance footage (the assailant throwing beer cans), or plainly did not belong to Plaintiff (the Honduran passport). Moreover, the Detective limited his search to the passenger compartment of Plaintiff's van because "that was the only area of the van that we knew the suspect to be in …." *Id.* at 66:1-3. With respect to the remaining items, the "intent was to have Mr. Mencias come in, tell us his version of the story, and be able to tell us if there was any additional information or any additional evidence inside that van …." *Id.* at 75:22-76:3. Plaintiff can point to no case law – because there is none – that supports his novel proposition that a search of a vehicle automatically renders the further retention of that vehicle constitutionally objectionable. This *per se* interpretation is particularly inappropriate where, as here, the United States Attorney's Office confirmed its "continued need" for the van, *id.* at 75:10-12, initiated grand jury proceedings with respect to the ADW, and did not close its investigation until November, 2015. *See* discussion *infra* Part I.C.

Plaintiff also incorrectly assumes that Detective Dailey had the legal authority to release Plaintiff's vehicle without the United States' imprimatur. This extreme position blithely discounts the United States' role in its prosecution of the ADW, *see id.*, as well as relevant case law. "The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." *United States v. Farrell*, 606 F.2d 1341, 1343 (D.C. Cir. 1979) (quoting *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977)); *see also United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999) ("It is well settled that the government is permitted to seize evidence for use in investigation and trial, but that such property must be returned once criminal proceedings have concluded ….") (citations omitted). Seized property is "no longer needed for evidentiary purposes" when "trial is complete, the

defendant has pleaded guilty, or … the government has abandoned its investigation ….." *United States v. Harrell*, 530 F.3d 1051, 1057 (9th Cir.) (2008) (quotations and citation omitted).  It is undisputed that, here, the United States did not terminate its criminal proceedings relating to the ADW until it closed its investigation in November, 2015.

Moreover, assuming *arguendo* that Detective Dailey did have this unchecked authority to release Plaintiff's van, he would have risked sanctions under Super. Ct. Crim. R. 16 for not preserving and retaining the vehicle for inspection by the to-be-named criminal defendant. *Williams v. United States*, 77 A.3d 425 (D.C. 2013).  In *Williams*, MPD seized a car relating to a homicide, processed it for evidence, and released the car to its lienholder before arresting anyone.  *Id*. at 438.  During trial, the defendant moved for dismissal under Rule 16 based the government's failure to retain the car and permit him to discover potentially exculpatory evidence.  *Id.* at 437.  The trial court denied the motion, but did find that the government was negligent in releasing the car at the lienholder's request.  *Id.* at 438 n. 18.  In affirming the trial court's finding of negligence, the Court of Appeals admonished the USAO for "authoriz[ing] the car's release" and rejected MPD's contention that it was "caught in the middle" because the owner "ask[ed] for it back."  *Id*. at n. 18.

Here too, it would have been unreasonable for law enforcement to release Plaintiff's van at any point before November, 2015, because no one was arrested for the ADW.  Rule 16 includes the "obligation to preserve vital evidence within the government's possession before prosecution begins."  *Myers v. United States*, 15 A.3d 688, 690 (D.C. 2011) (citations omitted).  This obligation covers not only the prosecutor's office, but also "to all other investigative agencies of the government."  *Id*. (citations omitted).  In light of the Court of Appeals' expansive

interpretation of Rule 16, Detective Dailey could have risked judicial sanctions for failing to retain Plaintiff's van for inspection by the future criminal defendant.

Finally, Plaintiff's contention that "the seizure became unreasonable 'as a result of its duration[,]'" Pl.'s Mot. 14 (quoting *Segura*, 468 U.S. at 812), ignores well-settled case law sanctioning seizures of property for similar durations. *Cf. United States v. Eight Automobiles With Fraudulently Obtained Ohio & New York State Div. of Motor Vehicle Titles*, 356 F. Supp. 2d 223, 226 (E.D.N.Y. 2005) (denying the petitioners' motion for return of their vehicle that they unknowingly obtained from a chop shop, even though the government had retained their car for ten months and it was "entirely possible that neither the government nor the [criminal] defendants [would] ever make any evidentiary use of the car."). More importantly, it (again) ignores that Detective Dailey was not the prosecuting authority in this matter and that the United States did not terminate its criminal proceedings until November, 2015. *See Farrell*, 606 F.2d at 1343. To the extent Plaintiff feels aggrieved by the pace of the United States' prosecution of the ADW, Detective Dailey is not the proper Defendant.

### C. The United States Attorney's Office Did Not Authorize the Release of Plaintiff's Vehicle Until the End of November, 2015.

Plaintiff conflates MPD's physical custody of seized vehicles with the USAO's legal authority to close out cases and approve the release of any evidence relating to those cases. Stripped of its conclusory eloquence, Plaintiff's motion offers no facts showing how "Detective Dailey was in charge at every stage, from the initial seizure of the van and tools through their release more than 15 months later." Pl.'s Mot. 17. What Plaintiff does emphasize – that Detective Dailey ordered the seizure of Plaintiff's vehicle, obtained a search warrant for the vehicle, and completed the PD Form 81-C – merely show that Detective Dailey was, indeed,

being a detective.  *Id*. at 18.  These facts do not bear on the Detective's unilateral legal authority to release Plaintiff's van.[2]

Also unavailing is Plaintiff's reliance on the United States' Declaration relating to its authority to dispose of seized property.  Specifically, the Declaration provides that:

> USAO-DC has no policies related to seized property as we are not the custodian. MPD determines all dispositions of property that they seize during any investigation.  The USAO-DC has no authority to dispose of and/or retain property seized.  This authority rests solely with MPD.  When MPD makes the decision to release seized property, they will present an MPD form 81 C to a supervisor in our office to sign indicating that the USAO-DC has no objection to that release and that said property *is not needed to be retained as evidence*.  These matters are *handled on a case by case basis*.

USAO Decl. (emphases added).

This Declaration expressly provides that the United States makes case-by-case determinations that seized evidence is no longer needed as evidence for purposes of its criminal prosecutions.  Decl.  MPD's General Order 601.01, which governs MPD members' recording, handling, and disposition of property, also makes clear that the investigator "shall be responsible for obtaining the release [from the appropriate prosecuting authority]."  MPD General Order 601.01 at 26.  Based on the United States' Declaration and MPD's General Order, it is undisputed that, at minimum, an MPD member needs to present to the United States prosecutor a Form PD 81-C for the prosecutor to make the "case by case" determination.

Plaintiff mischaracterizes the United States' statement that it lacks the "authority to dispose of and/or retain property seized."  Decl.  Read in context, this statement stands for the

---

[2]   Plaintiff insists that undersigned counsel's January, 2016 phone call to Plaintiff's counsel apprising them that Plaintiff's vehicle was available for release evinces Detective Dailey's unquestioned ability to release the van.  *Id*.  This unfairly colors undersigned counsel's good faith efforts to expedite the return of Plaintiff's vehicle – after it had been approved for release by the USAO – as constitutional misconduct on Detective Dailey's account.  It is undisputed that the last action the Detective Dailey took with respect to Plaintiff's van was to forward the completed Form PD 81-C to the MPD Property Clerk.  Dailey Dep. 127-28.

proposition that the United States has no say in what MPD does with seized property in its physical custody once it is no longer needed for trial.  Plaintiff's dramatic interpretation, where Detective Dailey controlled not only MPD's investigation into the ADW but also the United States' call as to whether Plaintiff's property would be needed as evidence in the criminal prosecution, finds no support in the record.  Most importantly, it ignores what the USAO actually did; not only did the USAO reaffirm its interest in prosecuting the ADW more than a year after Detective Dailey seized Plaintiff's vehicle, *see* E-mail from Kara Traster, AUSA, to Matthew Dailey, MPD Detective (Sept. 15, 2015, 9:45 p.m.), it also informed Detective Dailey – two months later – that it had "closed out the case and [would] sign off on releasing the car."  E-mail from Kara Traster, AUSA, to Matthew Dailey, MPD Detective (Nov. 19, 2015, 1:46 p.m.).  This correspondence confirms the unremarkable: MPD personnel gather the facts to investigate crimes, while the USAO prosecutes these crimes and makes all legal determinations relating to these prosecutions.  This includes the legal determination as to whether or not seized property should be retained as evidence.

Plaintiff also glosses over the fact that the United States initiated grand jury proceedings relating to the ADW in March, 2015.  At the time, both Detective Dailey and the USAO wanted to speak with Plaintiff because they did not know whether he was a witness to the ADW or a suspect as an accessory-after-the-fact.  Dailey Dep. 120.  On March 4, 2015, AUSA Christopher Bruckmann forwarded a grand jury subpoena to Detective Dailey so that the Detective could serve it on Plaintiff.  E-mail from Christopher Bruckmann, Assistant U.S. Attorney, U.S. Attorney's Office for D.C., to Matthew Dailey, MPD Detective (Mar. 4, 2015, 7:30 p.m.).  Detective Dailey served Plaintiff with this subpoena.  In May, 2015, AUSA Traster replaced AUSA Bruckmann as the lead prosecutor.  E-mail from Kara Traster, AUSA, to Matthew Dailey,

MPD Detective (May 13, 2015, 1:12 p.m.).  This is when the USAO brought in witnesses to testify before the grand jury.  Dailey Dep. 107:19-21.  Detective Dailey's role was to "assist the attorney and sit with the attorney during all interviews."  *Id*. at 86:21-22; *id*. at 105:10-13 ("[I] was still working with the U.S Attorney's Office and trying to develop witnesses and develop more evidence in the case so that we could move forward.").  The United States' grand jury investigation into the ADW remained active until November, 2015.  *Id*. at 86:9-13.  Yet, according to Plaintiff, Detective Dailey should have unilaterally released his property during the pendency of these grand jury proceedings.  This is a stunning interpretation of the Fourth Amendment.

Detective Dailey is entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim.

## II.   Detective Dailey is Entitled to Judgment as a Matter of Law on Plaintiff's Fifth Amendment Claim.

Detective Dailey did not deprive Plaintiff of his property "without due process of law." U.S. Const. amend. V; *City of West Covina v. Perkins*, 525 U.S. 234 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009).  To prevail on a Fifth Amendment procedural due process claim, a "plaintiff must establish that he had a protected interest in life, liberty, or property[3] and that government officials knowingly, and not merely negligently, deprived him of that interest without notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Stoddard*, 68 F. Supp. 3d at 112 (citations omitted).

---

[3]  Detective Dailey does not dispute that Plaintiff has a property interest in his vehicle.

"Due process may be satisfied by either pre-deprivation procedures or 'adequate post-deprivation remedies.'"  *Rason v. Nicholson*, 562 F. Supp. 2d 153, 155 (D.D.C. 2008) (citing *Dickson v. Mattera*, 38 Fed. Appx. 21 (D.C. Cir. 2002)); *see also Hudson v. Palmer*, 468 U.S. 517, 522 (1984).  It is well-settled that an adequate post-deprivation state remedy can satisfy the Due Process clause, *Parratt*, 451 U.S. at 543, and it "is up to plaintiff[] to demonstrate that there are no state remedies available."  *Huron Valley Hosp.*, *Inc. v. City of Pontiac*, 887 F.2d 710, 716 (6th Cir. 1989) (citations omitted).  And even if the state remedy does "not provide the [plaintiff] with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt*, 451 U.S. at 544.

Plaintiff was not entitled to pre-deprivation process before Detective Dailey seized his vehicle on September 6, 2014.  Without question, a police officer can seize property that the officer reasonably believes contains evidence of a crime or was used in the commission of a crime without notifying the owner of the seizure.[4]  Similarly, Detective Dailey was not required to notify Plaintiff before obtaining a search warrant and searching Plaintiff's vehicle.  *Fuentes v. Shevin*, 407 U.S. 67, 93-94 n. 30 (1972) ("The danger is all too obvious that a criminal will destroy or hide evidence or fruits of his crime if given any prior notice.").

It is also undisputed that Plaintiff did not avail himself of any available post-deprivation remedies.  For example, Plaintiff could have pursued an action *in detinue*, or a request for return of the seized items by the MPD Property Clerk pursuant to D.C. Code § 5-119.06.  *Dickson*, 38 Fed. Appx. at 22 (D.C. Cir. 2002) (citations omitted).  An adverse decision under either would have permitted for judicial review in Superior Court.  *Id.*

---

[4]  In any event, Plaintiff was on notice that MPD Officers seized his vehicle because Plaintiff was on scene at the time.

Alternatively, Plaintiff could have filed a timely motion for return of property under Fed. R. Crim. P. 41(g), or its state court analog, D.C. Super. Ct. Crim. R. 41(g).  A district court has the power to entertain Rule 41(g) motions when "there are no criminal proceedings pending against the movant."  *In re Singh*, 892 F. Supp. 1, 3 (D.D.C. 1995) (citations omitted).  Motions filed "prior to the return of an indictment or information are treated as civil equitable proceedings."  *Id*. (citations omitted).  Rule 41(g) provides that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The court *must* receive evidence on any factual issue necessary to decide the motion."  D.C. Super. Ct. Crim. R. 41(g) (emphasis added).  In other words, the Rule requires a hearing.

"Although concise, Rule 41(g) is a comprehensive scheme that provides a straightforward and adequate remedy – and one that avoids any constitutional deprivation."  *Leyland v. Edwards*, 797 F. Supp. 2d 7, 10 (D.D.C. 2011).  Here, Plaintiff was abundantly aware that MPD seized his vehicle on September 6, 2014, but did not pursue a Rule 41(g) motion until more than fifteen (15) months later when he filed his initial Complaint in this matter.  *See* Compl. [1].  Detective Dailey was not responsible for this dilatory motion.   To the extent Plaintiff believes that Detective Dailey had the constitutional obligation to apprise Plaintiff of his post-deprivation remedies, the Supreme Court has been clear: "When police seize property for a criminal investigation, … due process does not require them to provide the owner with notice of state-law remedies."  *Perkins*, 525 U.S. at 240.[5]

---

[5]  "No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to those public sources to learn about the remedial procedures available to him.  The City need not take other steps to inform him of his options."  *Id*. at 241.

Finally, with respect to the period between November 26, 2015, when the USAO approved the release of Plaintiff's vehicle, and January 7, 2016, when undersigned counsel informed Plaintiff's counsel that the vehicle was available for release, Plaintiff can point to no facts showing that it was Detective Dailey's job to inform Plaintiff that the USAO had signed off on the Form PD 81-C.  Detective Dailey was not, and is not, a Property Clerk.  After receiving the completed Form PD 81-C, Detective Dailey immediately forwarded a copy to the actual Property Clerk.   Dailey Dep. 126:10-15.   He also knew that Plaintiff's counsel were communicating with both MPD and the USAO with respect to his vehicle, and reasonably assumed that the USAO would inform Plaintiff that it had signed off on the Form PD 81-C.  *Id.* at 128:13-21.  After November 26, 2015 (the date the USAO signed the Form PD 81-C), neither Plaintiff nor his representatives inquired as to how to retrieve his property.  Instead, Plaintiff filed this lawsuit.  Detective Dailey is not responsible for this litigation decision.

### III.   Detective Dailey Is Entitled to Qualified Immunity on Both Claims.

Detective Dailey is entitled to qualified immunity because any reasonable officer would have believed that Detective Dailey's actions were lawful, "in light of clearly established law and the information that … [he] possessed."  *Komongnan*, 471 F. Supp. 2d at 5 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see also Butera v. District of Columbia*, 235 F.3d 637, 646–47 (D.C. Cir. 2001).  Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when

19

they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It applies regardless of whether the "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

Courts follow a two-prong analysis in analyzing a qualified immunity defense. *Id.* at 232. First, "whether the plaintiff has alleged the deprivation of a constitutional right at all," *Butera*, 235 F.3d at 646 (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)), and second, "whether the right was 'clearly established,'" *id.* (citations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015) (citation and brackets omitted); *see also al-Kidd*, 563 U.S. at 741 (noting that courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate"). "[T]he sequence in which this two-prong inquiry is addressed is left to the discretion of the district court, based on the circumstances of the particular case." *Winder v. Erste*, 905 F. Supp. 2d 19, 28 (D.D.C. 2012) (citing *Pearson*, 555 U.S. at 236).

In short, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. Detective Dailey is neither.

## A.   <u>Fourth Amendment</u>

Detective Dailey is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claim. Assuming that MPD Officers do, in fact, have the awesome authority to

unilaterally release vehicles seized as evidence,[6] no reasonable officer could have known that he

was violating a clearly established constitutional right in waiting for the United States to close its

criminal investigation.  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("A clearly established

right is one that is sufficiently clear that every reasonable official would have understood that

what he is doing violates that right.") (quotations and citation omitted).

Specifically, no reasonable officer would assume that he had the constitutional obligation

to return Plaintiff's property *sua sponte*, without approval from the USAO to declassify the

property as evidence.  That would contravene MPD's General Order 601.1 and expose the MPD

member to discipline.  *See* MPD General Order 601.01 at 26.  It would also expose that officer to

potential sanctions under *Williams*, 77 A.3d 425, for failing to preserve critical evidence for

future inspection by the criminal defendant.

Moreover, no reasonable officer would assume he had a duty to advocate on Plaintiff's

behalf instead of assisting the USAO with its ongoing prosecution of the ADW.  Even after

Detective Dailey searched Plaintiff's vehicle on September 23, 2014, the United States affirmed

its "continued need" for Plaintiff's vehicle as evidence.  Dailey Dep. 75:6-12.  It is undisputed

that Detective Dailey only searched the passenger compartment of Plaintiff's van because "that

was the only area of the van that we knew the suspect to be in …."  *Id*. at 66:20-66:3.  Both

Detective Dailey and the USAO needed additional information to distinguish Plaintiff's

belongings from the assailant's.  *Id*. at 75.  Although Plaintiff avers that he "provided all of the

information he had" during his September 11, 2014 interview with MPD officers, 2d Am.

Compl. at ¶ 85, it was not unreasonable for Detective Dailey to discredit that averment and press

Plaintiff for additional information.  For one, Detective Dailey did not participate in the

---

[6]  And they do not.

September 11, 2014 interview.  Dailey Dep. 51:14-16.  More importantly, it was reasonable for him to discredit Plaintiff's recitation of reality because it was contradicted by both the restaurant surveillance footage and the contemporaneous statements of unrelated eyewitnesses.  *Id*. at 79:6-16.[7]

The Supreme Court has repeatedly admonished against "defin[ing] clearly established law at a high level of generality."  *Mullinex*, 136 S. Ct. at 308.  Plaintiff fails to do even that. Not only does Plaintiff fail to identify any case law proscribing Detective Dailey's "particular" conduct "in the situation he confronted[,]" *id*. at 309 (alteration omitted), Plaintiff asks this Court to ignore that the United States (1) initiated grand jury proceedings into the ADW, and (2) re-affirmed its interest in prosecuting the ADW more than one year after the initial seizure of Plaintiff's van.  *See* E-mail from Kara Traster, AUSA, to Matthew Dailey, MPD Detective (Sept. 15, 2015, 9:45 p.m.) ("I *definitely* want to move forward with these cases.") (emphasis added). And although Plaintiff cites heavily to the United States' Declaration, this Declaration – prepared for purposes of this litigation as a compromise in exchange for Plaintiff's agreement to withdraw his Rule 30(b)(6) Notice of Deposition to the USAO – cannot establish the clearly established law in effect at the time.

### B.    Fifth Amendment

Similarly, Detective Dailey is entitled to qualified immunity with respect to Plaintiff's Fifth Amendment claim.  To begin, Plaintiff can point to no facts showing that the Detective, through his individual actions, violated the Fifth Amendment's guarantee of due process.

---

[7]    "[B]ut when there's multiple people that are separate from each other, because they're complainants – in this particular case, there are complainants that were the owners of the restaurant, which [was] one party, and there were also patrons of the restaurant that were separate from the restaurant [owners] that had the same story, then you have Mr. Mencias, who is a separate entity that left, has an entirely different story from everyone else that was there."

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("a plaintiff must establish that each Government-official defendant, through the official's own actions, has violated the Constitution").   The Detective was not obliged to provide Plaintiff with pre-deprivation process during the initial seizure or subsequent search, and Plaintiff fails to show how his own failure to pursue available post-deprivation remedies can be imputed onto the Detective for purposes of this lawsuit. *Perkins*, 525 U.S. at 237 ("When the police seize property for a criminal investigation, . . . due process does not require them to provide the owner with notice of state-law remedies."); *Dickson*, 38 Fed. Appx. at 22 ("Appellant cannot state a standard due process claim because the District of Columbia provides adequate post-deprivation remedies."); *Leyland*, 797 F. Supp. 2d at 11 ("Rule 41(g) provid[es] an adequate, comprehensive procedural and remedial scheme.").

Although Plaintiff elucidates for everyone's benefit multiple novel averments as to what the Due Process Clause should require, *see*, *e.g*, 2d Am. Compl. at ¶¶ 229-31, this is not enough to vitiate Detective Dailey's entitlement to qualified immunity.[8]  *Taylor v. Reilly*, 685 F.3d 1110, 1114 (D.C. Cir. 2012).   Not only does Plaintiff's interpretation of due process rely on an unacceptably "high level of generality," *Mullinex*, 136 S. Ct. at 308, it runs counter to well-settled law.

Detective Dailey is entitled to qualified immunity with respect to Plaintiff's Fourth and Fifth Amendment claims.

---

[8]  For example, Plaintiff avers that "due process requires some form of notice explaining the grounds for the seizure and *the procedure for challenging the seizure*."   *Id*. at ¶ 231 (emphasis added).  This is contrary to *Perkins*, 525 U.S. 234.

## CONCLUSION

Defendant Detective Matthew Dailey respectfully requests that this Court grant his motion and enter judgment in his favor as a matter of law on Plaintiff's Fourth and Fifth Amendment claims.

October 12, 2016                                    Respectfully Submitted,


KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Chad Copeland*
CHAD COPELAND [982119]
Chief, Civil Litigation Division Section II

*/s/ William J. Chang*
WILLIAM J. CHANG [1030057]
Assistant Attorney General
441 Fourth Street, NW
Suite 630 South
Washington, D.C. 20001
202-724-6646
202-741-0667(fax)
william.chang@dc.gov

*Counsel for Defendant*

24