**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**ERLIN EVER MENCIAS AVILA,**

       Plaintiff,

v.

**MATTHEW DAILEY,**

       Defendant.

Civil No. 1:15-cv-02135-TSC

**<u>PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR
PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Erlin Ever Mencias Avila (Mr. Mencias) moved for partial summary judgment on his claim that defendant Matthew Dailey (Det. Dailey) engaged in an unreasonable seizure in violation of the Fourth Amendment by holding Mr. Mencias's work van and tools for 15 months after Det. Dailey searched the van and removed any items of evidentiary value. Det. Dailey filed a cross-motion for summary judgment on Mr. Mencias's Fourth Amendment claim, conceding that there is no genuine dispute as to any fact material to that claim and arguing that he cannot be held liable for his post-search retention of Mr. Mencias's van. As explained below, Det. Dailey's arguments are without merit, and the Court should enter judgment in Mr. Mencias's favor on the issue of liability and proceed to trial to determine Mr. Mencias's damages.

On Mr. Mencias's due process claim, Det. Dailey has moved for summary judgment, arguing that, as a matter of law, the existence of a post-deprivation procedure for challenging the government's seizure of property incident to a criminal investigation insulates Det. Dailey from liability under the Fifth Amendment. As explained below, Mr. Mencias's due process claim is not premised on the lack of a post-deprivation remedy. Rather, Mr. Mencias argues that Det. Dailey

interfered with Mr. Mencias's ability to utilize any available post-deprivation procedures by failing to provide information that Mr. Mencias needed to access such procedures and by providing false information regarding the process for return of the van and tools. Because Det. Dailey's motion does not address the notice issues on which Mr. Mencias bases his due process claim, and because there are fact disputes regarding what Mr. Mencias was told and when, Det. Dailey is not entitled to summary judgment on Mr. Mencias's Fifth Amendment claim.

## ARGUMENT

### I.  The Court Should Enter Summary Judgment for Mr. Mencias on His Fourth Amendment Claim.

#### A.  No Factual Disputes Preclude Summary Judgment on Mr. Mencias's Fourth Amendment Claim.

In support of his motion for partial summary judgment, Mr. Mencias submitted a statement listing 95 discrete facts supported by citations to the record. *See* Pl.'s Statement of Undisputed Material Facts, Doc. 24-1 (Pl.'s Statement). Det. Dailey admits 32 of those facts.[1] Of the remaining 63 facts, all but 5 should be considered admitted because Det. Dailey failed to controvert the statements with any citations to the record. For example, where Mr. Mencias stated a fact and supported it with reference to deposition testimony, Det. Dailey often refused to admit the fact itself but cited no contradictory record evidence, and instead admitted only that the witness so testified.[2] Similarly, where Mr. Mencias stated a fact by paraphrasing deposition testimony or summarizing activity shown on video footage, Det. Dailey often disputed the fact "to the extent"

---

[1] Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts, Doc. 27-3 (Def.'s Resp. to Pl's Statement) ¶¶ 1–3, 10, 17, 20, 25–29, 39, 40, 44, 54–59, 61, 62, 65, 69, 76, 78, 80, 81, 86, 88, 89, 94.

[2] *Id.* ¶¶ 4–6, 11, 18, 31, 32, 42, 66, 67, 70, 82.

it conflicts with the deposition testimony or the video footage,[3] which he said "speaks for itself," without explaining how the statement of fact is not fairly supported by the deposition testimony or video footage.[4] Even where Det. Dailey disputes a fact by offering his own characterization, he often does so without citation to any record evidence.[5] Such efforts to create factual disputes are unavailing.

Local Civil Rule 7(h)(1) requires that a party opposing a summary judgment motion set forth "all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." Where a party fails to do so, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted." *Id.* As this Court has explained, the rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 110 F. Supp. 3d 111, 115 (D.D.C. 2015) (quoting *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996)); *see also Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 8 (D.D.C. 2002) ("Because the rule helps the district court maintain docket control and decide motions for summary judgment efficiently, the D.C. Circuit has repeatedly upheld district court rulings that hold parties to strict compliance with this rule."). Adherence to the rule ensures that the Court is

---

[3] Det. Dailey takes issue with Mr. Mencias's reliance on a sworn declaration summarizing the relevant portions of the video footage. Because Det. Dailey questions the accuracy of the declaration but has not submitted the video footage for the Court's review, Mr. Mencias has made the video footage available at: http://instituteforpublicrepresentation.org/2016/11/07/mencias-security-videos/.
[4] Def.'s Resp. to Pl.'s Statement ¶¶ 7, 8, 12, 21–24, 33, 35, 38, 43, 45–47, 50–52, 60, 63, 68, 71–73, 77, 79, 83, 84, 87, 90, 95.
[5] *Id.* ¶¶ 9, 13, 14, 16, 19, 30, 41, 49, 64, 74, 85, 91–93.

not "obliged to sift through hundreds of pages of depositions, affidavits, and other interrogatories in order to make its own analysis and determination of what may, or may not be a genuine issue of material fact." *Williams*, 110 F. Supp. 3d at 115 (internal brackets omitted) (quoting *Jackson*, 101 F.3d at 151).

Because Det. Dailey provided record citations for only 5 of the facts he disputes, the Court should consider the other facts admitted for purposes of Mr. Mencias's motion. As to the 5 facts that Det. Dailey disputes with record citations, those five relate to what was said by whom on the night the van was seized, Pl.'s Statement ¶¶ 34, 36, and 37, and during the interview on September 11, 2014, *id.* ¶ 53, and what occurred when Mr. Mencias attempted to inquire by telephone about his van, *id.* ¶ 75. These disputes are relevant to Mr. Mencias's Fifth Amendment claim, but do not preclude summary judgment on his Fourth Amendment claim.

The essential facts on which Mr. Mencias rests his Fourth Amendment claim are straightforward and undisputed:

- Det. Dailey was the lead detective in the investigation of an alleged assault with a dangerous weapon (ADW) at El Torogoz Restaurant. Pl.'s Statement ¶ 25; Def.'s Statement of Undisputed Facts, Doc. 27-1 (Def.'s Statement) ¶ 4.

- The suspect in the ADW, Luis, left the scene as a passenger in Mr. Mencias's van. Pl.'s Statement ¶ 15; Def.'s Statement ¶ 21.

- Det. Dailey seized Mr. Mencias's van to allow for a search for evidence as to the identity of the suspect, who was known to have been a passenger in the van. Pl.'s Statement ¶ 30.

- On September 23, 2014, pursuant to a search warrant, Det. Dailey searched Mr. Mencias's van for evidence as to the identity of the suspect, and removed the suspect's Honduran passport, and four empty beer cans and a knife that might contain the suspect's fingerprints or DNA. Pl.'s Statement ¶¶ 55–59; Def.'s Statement ¶¶ 47–49.

- Following the search, Det. Dailey did not know if the remaining items in Mr. Mencias's van had any evidentiary value. Pl.'s Statement ¶ 60.

- Det. Dailey knew that Mr. Mencias wanted his van and tools back and that he needed them for work. Pl.'s Statement ¶¶ 42, 43, 45.

- Det. Dailey took no action to effectuate the return of Mr. Mencias's van or tools until November 26, 2015. Pl.'s Statement ¶¶ 61, 73, 90–93; Def.'s Statement ¶ 63.

- Mr. Mencias did not learn that his van and tools were available until January 7, 2016. Pl.'s Statement ¶ 94.

### B. Mr. Mencias Is Entitled to Judgment as a Matter of Law on His Fourth Amendment Claim.

In his opening memorandum, Mr. Mencias explained that he is entitled to summary judgment on his Fourth Amendment claim because Det. Dailey, acting under color of state law, continued his seizure of Mr. Mencias's work van and tools for 15 months after Det. Dailey searched the van and removed the evidence as to the identity of a suspect who had been a passenger. *See* Pl.'s Mem. at 11–20. Following the search and removal of the items of evidentiary value, Det. Dailey no longer had probable cause to hold the van and tools, and any interest Det. Dailey may have had in continuing the seizure was outweighed by Mr. Mencias's strong possessory interest in the vehicle and tools he needed for his job. As the opening memorandum explained, "a seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons." *Segura v. United States*, 468 U.S. 796, 812 (1984). Further, assessing the reasonableness of the seizure requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Jacobsen*, 466 U.S. 109, 125 (1984);

Subject to some limited exceptions not applicable here, a lack of probable cause renders a seizure unreasonable. *See Robinson v. Dist. of Columbia*, 130 F. Supp. 3d 180, 192 (D.D.C. 2015) (citing *Graham v. O'Connor*, 490 U.S. 386, 395 (1989) ("A seizure may be unreasonable . . . because it was unjustified by the circumstances—*i.e.*, the police lacked probable cause."); *United*

*States v. Place,* 462 U.S. 696, 706 (1983) (holding that if the purpose of seizure is to conduct a search, it must be based on probable cause); *cf. Whren v. United States*, 517 U.S. 806, 819 (1996) ("[T]here is no realistic alternative to the traditional common-law rule that probable cause justifies a search and seizure."). Probable cause exists where there is a reasonable ground for belief that the item seized is "contraband or evidence of a crime." *Place,* 462 U.S. at 701. Once probable cause dissipates, a seizure becomes unreasonable because there is no state interest to justify the continued interference with the owner's possessory interest. *See Jacobsen*, 466 U.S. at 125.

In his Opposition, Det. Dailey does not claim that fact disputes preclude summary judgment, and Det. Dailey does not dispute that Mr. Mencias had a strong possessory interest in his van and tools and that the seizure interfered with that interest for more than 15 months. Rather, Det. Dailey argues that he is entitled to judgment as a matter of law for four reasons. First, Det. Dailey asserts that rank speculation that the van might contain further evidence of an unknown nature constitutes probable cause to continue the seizure for the duration of the investigation and that this speculation is a governmental interest that outweighs Mr. Mencias's possessory interest in his work van and tools. Def.'s Mem. at 10–11. Second, Det. Dailey argues that it was reasonable to continue to hold Mr. Mencias's van and tools until the United States Attorney's Office for the District of Columbia (USAO-DC) abandoned its investigation, in order to preserve the vehicle for possible future inspection by a possible future criminal defendant. Def.'s Mem. at 11–12. Third, Det. Dailey argues that he was not responsible for the 15-month post-search seizure of the van and tools because he was required to consult the USAO-DC before releasing Mr. Mencias's property. Def.'s Mem. at 13–16. Finally, Det. Dailey argues that he is entitled to qualified immunity because a reasonable police officer would not have known that continuing to hold a witness's work van and tools for 15 months after probable cause dissipated following a search and removal of evidence

violates the Fourth Amendment's prohibition on unreasonable seizures. Def.'s Mem. at 20–22.

Det. Dailey's arguments are without merit.

    **1. Speculation that the van might have contained further evidence of an unknown nature cannot provide probable cause or outweigh Mr. Mencias's significant possessory interest in his van and tools.**

Mr. Mencias used his van to drive the suspect in the ADW away from the scene, and Det.

Dailey had probable cause to seize the van, obtain a search warrant, and search the passenger

compartment for evidence as to the identity of the suspect. The search was successful. Det. Dailey

found and removed a Honduran passport with the suspect's full name, photograph, and date of

birth. Det. Dailey also seized four empty beer cans and a knife that may contain the suspect's

fingerprints or DNA. These facts are undisputed, and Mr. Mencias does not challenge the initial

seizure of his van or its retention through the time of the search, nor does he challenge the

continued seizure of the passport, beer cans, and knife.

The issue before the Court is whether it was reasonable for Det. Dailey to *continue* to hold

Mr. Mencias's van and tools *following* the search and the removal of the evidence as to the

suspect's identity. Det. Dailey argues that the continued seizure of the van was reasonable because

"the September 23, 2014 search of Plaintiff's vehicle did not cleanse it and its contents of all

evidentiary value." Def.'s Mem. at 10. Det. Dailey, however, fails to explain how the van and tools

may have had evidentiary value following the search. Indeed, he admits that "neither Det. Dailey

nor the USAO could reasonably determine the evidentiary value of the remaining items," i*d.*, and

he admits that the van was held as leverage to encourage Mr. Mencias to come in and provide

further information. *Id.* at 11. Det. Dailey concludes by asserting, without citation, that the search

of a vehicle does not "automatically render[] the further retention of that vehicle constitutionally

objectionable." *Id.*

Det. Dailey misapprehends the requirements of the Fourth Amendment. Det. Dailey must show that he had probable cause to continue the seizure after the search. Det. Dailey's statement that he continued the seizure because he did not know if the van might contain further evidence is insufficient to establish probable cause. *See United States v. Green*, 670 F.2d 1148, 1151 (D.C. Cir. 1981) (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)) ("[P]robable cause, of course, requires more than mere suspicion."). Further, the government's interest in continuing the seizure on the off chance that the van might possibly contain further evidence must be weighed against Mr. Mencias's possessory interest. *See Jacobsen*, 466 U.S. at 125. Det. Dailey does not even attempt to argue that the government's interest was greater than that of Mr. Mencias. Failing even to attempt to establish probable cause and failing to compare the government's interest to that of Mr. Mencias, Det. Dailey has essentially admitted that the continued seizure violated the Fourth Amendment.

Det. Dailey's speculation regarding a possible future need for the van is far outweighed by Mr. Mencias's concrete, immediate need for the van and tools *to make a living*. There is no dispute that the van and tools had enormous value to Mr. Mencias. Indeed, Det. Dailey observed that "there were a lot of tools in the vehicle that [Det. Dailey and Det. Xanten] imagined were important in [Mr. Mencias's] work in doing whatever he did." Pl.'s Exhibit E, Doc. 24-1 at 98. Further, vehicles represent an especially compelling possessory interest. *See Simms v. Dist. of Columbia*, 872 F. Supp. 2d 90, 100–01 (D.D.C. 2012) ("An individual has a strong interest in his car . . . . In addition, the length of the deprivation increases the weight of the individual's interest in possessing the vehicle.") (internal quotations removed); *Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002) (stating than "an individual has an important interest in the possession of his or her motor vehicle, which is often his or her most valuable possession") (internal citations removed); *see also Coleman*

*v. Watt*, 40 F.3d 255, 260–61 (8th Cir. 1994) ("Automobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life."); *Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1342–43 (9th Cir. 1977) (finding a "substantial" interest in the "uninterrupted use of an automobile," upon which the owner's "ability to make a living" can depend).

The widespread consensus on the value and importance of vehicles demonstrates that Det. Dailey's 15-month seizure of Mr. Mencias's van and tools—items crucial to his livelihood—in the absence of probable cause and any strong interest in retaining the van and tools violated the Fourth Amendment.

## 2. To hold Mr. Mencias's van and tools until the investigation was closed was unreasonable.

Det. Dailey argues—for the first time—that he continued the seizure of Mr. Mencias's van following the search because he was obligated to retain the van for inspection by a future criminal defendant. Def.'s Mem. at 12. Det. Dailey never articulated this theory during discovery, and he provides no citation to any record evidence to support his new contention. In any event, Det. Dailey's argument makes no sense. The van was seized to allow for a search for evidence that would identify the suspect who had been a passenger in the van. Pl.'s Statement ¶ 56. The items relevant to identifying the suspect were removed from the van during the search of September 23, 2014, and Det. Dailey continues to retain those items. *Id.* ¶¶ 57, 59. Thus, to the extent a future criminal defendant wants to inspect the evidence removed from the van, the items are available. There is no reason to believe that the van itself, or the tools within it, would have any relevance to a prosecution of the suspect in the underlying ADW, which ended before Mr. Mencias drove the suspect from the scene. Indeed, in paragraph 100 of his Answer to Plaintiff's Second Amended

Complaint, Det. Dailey admitted that he "did not know what evidentiary value the remaining items in Plaintiff's van had."

In support of his new theory, Det. Dailey cites *Williams v. United States*, 77 A.3d 425 (D.C. 2013). *Williams* considered the seizure of a car that was literally a "preserved crime scene" because two individuals were shot and killed in the front seats. *Id.* at 428, 438 n.18. The court admonished the police officer for releasing the vehicle during the pendency of the case because doing so was unreasonable in the context of a murder investigation lacking an "eyewitness or physical evidence pointing strongly to the identity of a shooter." *Id.* at 438 n.18. Plainly, Mr. Mencias's van is nothing like the car in *Williams*, because the underlying crime did not occur in the van; it took place in a crowded restaurant, where it was watched by numerous eyewitnesses and captured on videotape. The crime was over before the suspect was driven from the scene in Mr. Mencias's van. Unlike in *Williams*, the van *itself* was not evidence of the crime, much less "vital evidence." Def.'s Mem. at 12 (quoting *Myers v. United States*, 15 A.3d 688, 690 (D.C. 2011)). It was useful only for identifying the suspect. Thus, to the extent Det. Dailey was required to preserve *evidence* as to the identity of the suspect, namely the passport, beer cans, and knife, he has done just that.

Det. Dailey cites an out-of-circuit district court decision to argue that there is "well-settled case law sanctioning seizures of property for similar durations." Def.'s Mem. at 13 (citing *United States v. Eight Autos. with Fraudulently Obtained Ohio & N.Y. State Div. of Motor Vehicle Titles*, 356 F. Supp. 2d 223, 226 (E.D.N.Y. 2005)). Det. Dailey's argument misses the point. That a lengthy seizure may be reasonable in one case does not establish that seizures of that length are *per se* reasonable. Further, the facts of *Eight Automobiles* are easily distinguished from those here. In *Eight Automobiles*, the "sparse factual record" showed that, unlike Mr. Mencias's van, the vehicle in question was *itself* direct evidence of a complex fraud operation because it was literally

made from stolen parts. *Id.* at 226. Moreover, the court explained that "the law requires a reasonable balance—not the extinction of the petitioners' interest in favor of the government's." *Id.* Finally, the court made clear that it was denying the motion for return of the vehicle without prejudice and admonished the government that it would be required to "make a more complete factual record as to its continued need to retain the car, its expectation as to when that need will be satisfied, and the reason why it cannot satisfy those requirements without returning the car to the petitioners." *Id.* at 224.

> **3. The requirement that a police officer consult the prosecutor before releasing property seized as evidence cannot excuse Det. Dailey's unconstitutional seizure of Mr. Mencias's van and tools, because Det. Dailey did not seek such approval.**

Det. Dailey seeks to avoid responsibility for his 15-month post-search seizure of Mr. Mencias's van by arguing that he did not have "the legal authority to release Plaintiff's vehicle without the United States' imprimatur." Def.'s Mem. at 11. What Det. Dailey does not mention is that he never asked the USAO-DC whether it objected to the release of Mr. Mencias's van and tools.

The USAO-DC's declaration in this case is clear:

> MPD determines all dispositions of property that they seize during any investigation. The USAO-DC has no authority to dispose of and/or retain property seized. This authority rests solely with MPD. When MPD makes the decision to release seized property, they will present an MPD Form 8lc to a supervisor in our office to sign indicating that the USAO-DC has no objection to that release and that said property is not needed to be retained as evidence.

Decl. of USAO-DC, Pl.'s Ex. B, ¶¶ 3–7. MPD policy is just as clear:

> In cases of evidence or suspected proceeds of crime where no arrest is made, the member first taking the property into custody shall be responsible for obtaining a PD Form 81-C from the appropriate prosecuting attorney and delivering it to the Court Property Control Office, except in the cases being handled by an investigator who shall then be responsible for obtaining the release. In all other cases where

release is required, the member handling the case in court shall be responsible for obtaining and preparing the PD Form 81-C.

Metropolitan Police Department General Order 601.01: Recording, Handling & Disposition of Property Coming into the Custody of the Department, Attached as Exhibit I to Pl.'s Statement, at 26.

In accordance with policy, Det. Dailey, following the search of the van, should have begun the process to release the van and tools. It is precisely because Det. Dailey did not take this reasonable action when probable cause to seize the van dissipated and Mr. Mencias's property interests clearly outweighed Det. Dailey's nonexistent or minimal speculative interest, that he—not the USAO-DC—is the party responsible for the unconstitutional deprivation of property.

Det. Dailey argues that he retained the van following the search of September 23, 2014, based on two emails from Assistant United States Attorneys (AUSAs), but the emails do not support his contention. The first email is dated March 4, 2015, nearly six months after the search of the van, and is from AUSA Christopher Bruckmann attaching a subpoena for Mr. Mencias to appear as a witness before a grand jury investigating the ADW. Def.'s Ex. N. The email does not mention Mr. Mencias's van and tools and certainly does not constitute an objection to their release. Additionally, the initiation of grand jury proceedings in March 2015 does not support Det. Dailey's claim that he retained Mr. Mencias's van and tools at the behest of the USAO-DC, because it was Det. Dailey that requested the grand jury subpoena for Mr. Mencias in the first place. In fact, the USAO-DC placed such low importance on Mr. Mencias's value as a witness that it never called Mr. Mencias to testify. Pl.'s Statement ¶ 82.

The second email is dated September 15, 2015, nearly a year after the search of the van, and is from AUSA Kara Traster, stating that the she wanted "to move forward" with several cases that Det. Dailey inquired about, including one Det. Dailey described as "the ADW Knife from the

Latino Restaurant." Def.'s Exh. P. Like the Bruckmann email, the Traster email does not mention Mr. Mencias's van and tools, much less object to their release. Indeed, neither email suggests that the AUSAs even knew that Det. Dailey had continued to retain Mr. Mencias's van and tools following the search of September 23, 2014.

### 4. Detective Dailey is not entitled to qualified immunity on Mr. Mencias's Fourth Amendment claim.

To succeed on a qualified immunity defense, a government official must demonstrate that he did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In this circuit, the Court determines whether a right is clearly established "by looking to cases from the Supreme Court and [the D.C. Circuit], as well as to cases from other courts exhibiting a consensus view, if there is one." *Lash v. Lemke*, 786 F.3d 1, 7 (D.C. Cir. 2015) (internal quotation marks and ellipsis omitted). The authority establishing the right only needs to "show that the state of the law at the time of the incident gave the officer fair warning that his alleged misconduct was unconstitutional." *Id.* (internal brackets and ellipses omitted). Thus, the facts of this case do not need to be materially the same as those of cases establishing the right. *See id.*

Here, Det. Dailey is not entitled to qualified immunity because an objectively reasonable police officer would know that it is unconstitutional to continue to seize a work van and tools for 15 months following a search and the removal of the items of evidentiary value. The Supreme Court held in *Segura* that a seizure "based upon probable cause may become unreasonable as a result of its duration or for other reasons." 468 U.S. at 812 (citing *Place*, 462 U.S. at 103). Further, the ultimate determination of the reasonableness of a seizure is determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Jacobsen*, 466 U.S. at

125. As the arguments above make clear, it cannot be disputed that a seizure without probable cause or a seizure where the owner's interest outweighs the government's interest violates clearly established law. Thus, Det. Dailey's continued seizure of Mr. Mencias's van after probable cause dissipated and when Mr. Mencias's interests outweighed those of the government violated clearly established Fourth Amendment law.

Det. Dailey fails to address the Supreme Court's instruction that "the duration of a seizure is ordinarily a factor to be considered in Fourth Amendment analysis." *Hudson v. Palmer*, 468 U.S. 517, 538 (1984) (O'Connor, J., concurring) (citing *Place*, 462 U.S. at 709–10). In *Place*, the Court mandated that a balancing test was necessary to establish whether an individual's interests in his or her property was outweighed by a legitimate government interest sufficient to justify an intrusion, holding that "[t]here is no doubt that the agents made a 'seizure' of Place's luggage for purposes of the Fourth Amendment[.]" 462 U.S. at 707. The Court then applied the balancing test to find that the reasonable initial seizure had become unreasonable after only 90 minutes. *Place*, 462 U.S. at 709. Similarly, in *Jacobsen*, the Court applied *Place*'s balancing test after determining the initial seizure was reasonable. *Jacobsen*, 466 U.S. at 124–25.

Det. Dailey argues that, even if he did violate Mr. Mencias's constitutional rights, his actions were objectively reasonable. However, in light of the clear policies and practices of both MPD and the USAO-DC, Det. Dailey's argument lack merit. *See United States v. Washington*, 559 F.3d 573, 578 (D.C. Cir. 2009) (holding that "courts analyze searches and seizures based on what an objectively reasonable officer could have believed and done, not what the officers subjectively thought"). Specifically, the USAO-DC's declaration explains that it is the MPD that initiates the process for return of seized property by completing the PD Form 81-C and sending it to the USAO-DC for sign-off. Pl.'s Statement ¶ 71. And the MPD General Order 601.01 explains

that the MPD member who seized the property "shall be responsible" for obtaining the prosecuting attorney's sign-off on a PD Form 81-C to confirm that the prosecutor does not object to the release of the property. Pl.'s Statement ¶ 63. Det. Dailey has failed to produce any evidence to support his assertion that he could not initiate the process for the return of Mr. Mencias's van and tools before the USAO-DC closed the case, and there is no evidence that the AUSAs involved in the investigation had suggested to him any need for Mr. Mencias's van and tools.

Because it is clearly established that a police officer violates the Fourth Amendment by continuing a seizure after probable cause dissipates and the owner's interest outweighs the government's interest, and no reasonable officer could have concluded that it was reasonable to continue to hold a witness's work van and tools for 15 months following a search and removal of the items of evidentiary value, Mr. Mencias is entitled to summary judgment on his Fourth Amendment claim.

## II.     Det. Dailey Is Not Entitled to Judgment as a Matter of Law on Mr. Mencias's Fifth Amendment Claim.

Mr. Mencias did not move for summary judgment on his Fifth Amendment due process claim because it is premised on disputed facts as to the content and manner of the notice he was provided by Det. Dailey, including that Det. Dailey told Mr. Mencias that his van and tools could be returned only if Mr. Mencias provided information as to Luis's identity and whereabouts. Det. Dailey's motion is based almost entirely on a single conclusion of law: that Federal Rule of Criminal Procedure 41(g), or its state-court analog, D.C. Superior Court Rule of Criminal Procedure 41(g), provides an adequate post-deprivation remedy for individuals whose property is unlawfully seized by the police, and due process does not require the police to provide property

owners with notice of post-deprivation remedies.[6] Def.'s Mem. at 18. Det. Dailey's reliance on the existence of Rule 41(g) is insufficient to defeat Mr. Mencias's due process claim, because the facts viewed in the light most favorable to Mr. Mencias establish that Det. Dailey's actions and omissions denied Mr. Mencias the opportunity to access the relief that might otherwise have been available under Rule 41(g). *See Robinson v. Pessat*, 818 F.3d 1, 8 (D.C. Cir. 2016) (At summary judgment, courts "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the nonmoving party.") (internal quotation marks omitted)).

### A.  Factual Background Relevant to Mr. Mencias's Fifth Amendment Claim

Immediately before Det. Dailey had Mr. Mencias's van towed to the Fourth District impound lot, the police told Mr. Mencias that he could avoid having his van taken, or get it back sooner, if he provided information that would help the police apprehend Luis. Pl.'s Statement ¶ 37. Mr. Mencias did not have the requested information, and his van was towed away. Pl.'s Statement ¶ 38. Thus, Mr. Mencias knew that the police had taken his van, but he was led to believe that it had been taken because he could not provide the requested information as to the identity and whereabouts of Luis. According to Mr. Mencias, Det. Dailey did not tell him that the van was being seized to allow for a later search for evidence as to Luis's identity. Pl.'s Resp. to Def.'s Statement of Undisputed Facts (Pl.'s Resp. to Def.'s Statement) ¶ 37.

---

[6] Det. Dailey also argues that Mr. Mencias was not entitled to pre-deprivation process, or to notice of the search before it was conducted, but Mr. Mencias has not asserted otherwise. Further, Det. Dailey mentions in passing the availability of "an action *in detinue*, or a request for return of the seized property by the MPD Property Clerk pursuant to D.C. Code § 5-119.06," Def.'s Mem. at 17, but Det. Dailey says nothing further about such remedies. Det. Dailey cannot rely on these conclusory arguments without providing any explanation or support. *See POM Wonderful, LLC v. F.T.C.*, 777 F.3d 478, 499 (D.C. Cir. 2015) (explaining that presenting an argument without "visible support" is insufficient to properly raise such argument).

At the time his van was taken, Mr. Mencias was not provided with any documents related to the seizure of his van and tools. He was not provided with a receipt, or a case number, or any written information indicating that the van had been seized as evidence. Pl.'s Statement ¶ 41. Thus, to the extent publicly available sources might reveal a process for recovering property seized as evidence, Mr. Mencias had no way of knowing that such procedures might apply to his case given the lack of information regarding why his van had been seized. Further, based on his conversation with the police the night the van was seized, Mr. Mencias understood the only "process" for regaining his van was to provide information about the identity or whereabouts of Luis.

Det. Dailey and his colleagues had a plan to use Mr. Mencias's expected inquiry about his van as an opportunity to seek such information. Pl.'s Statement ¶ 47. When Mr. Mencias inquired about the process for seeking return of his van and tools, he was questioned by the police and told that his van and tools could be returned in exchange for information about Luis's identity and whereabouts. Pl.'s Statement ¶¶ 52–53. Mr. Mencias had no such information, and Det. Dailey continued to hold Mr. Mencias's van and tools. Pl.'s Statement ¶ 54.

On September 23, 2014, Det. Dailey searched Mr. Mencias's van pursuant to a search warrant and removed the items that could identify Luis. Pl.'s Statement ¶¶ 55–57. Following the search, Det. Dailey did not provide Mr. Mencias with a copy of the executed search warrant; instead, Det. Dailey claims to have left a copy inside the van, even though he knew that Mr. Mencias did not have access to the van. Pl.'s Resp. to Def.'s Statement ¶ 78. Had Det. Dailey sent Mr. Mencias a copy of the executed search warrant, Mr. Mencias would have been on notice that the van had been seized to allow for a search for evidence and that the search had been completed. *See* Def.'s Ex. L. Such information might have led Mr. Mencias to learn of available procedures for seeking return of property.

On or about March 3, 2015, Mr. Mencias spoke to Det. Dailey by telephone and inquired again about his van and tools. Pl.'s Statement ¶ 79. Det. Dailey again told Mr. Mencias that the van and tools would be returned only if Mr. Mencias provided information about Luis, and Det. Dailey also told Mr. Mencias that his van and tools could be sold at auction if Mr. Mencias did not provide the requested information. Pl.'s Resp. to Def.'s Statement ¶ 51.

Moreover, from the seizure of his van and tools on September 6, 2014, until he was served with a grand jury subpoena on or about March 4, 2015, Mr. Mencias received no written notice of any kind related to the seizure of his property. The lack of any written notice regarding the nature of the seizure was particularly problematic for Mr. Mencias, because all of his interactions with the police, other than the interview of September 11, 2014, were in English. *See* Pl.'s Resp. to Def.'s Statement ¶¶ 76, 80. Although Mr. Mencias understands some English, his primary language is Spanish. *See* Pl.'s Dep. at 3. Had Mr. Mencias received written notice, he could have had it translated and understood the nature of the seizure, which might have led him to the procedure available under Rule 41(g).

On November 19, 2015, the USAO-DC informed Det. Dailey that the investigation of the incident at El Torogoz Restaurant was closed. Pl.'s Statement ¶ 86. On or about November 26, 2015, Det. Dailey received the completed PD 81-C form indicating that the USAO-DC had no objection to the release of Mr. Mencias's van. Answer to Second Amended Complaint ¶ 179. Even then, Det. Dailey took no action to notify Mr. Mencias that his van was available. *Id.* ¶ 242. Mr. Mencias initiated this case on December 10, 2015, and invoked Rule 41(g) in an effort to compel the release of his van. *See* Original Complaint ¶¶ 130–41. Det. Dailey's counsel then informed Mr. Mencias's counsel that the van was available, and Mr. Mencias retrieved it. Answer to Second

Amended Complaint ¶ 179. By that time, Det. Dailey had caused the van to be held for over fifteen months.

**B. Det. Dailey Violated Mr. Mencias's Right to Due Process by Failing to Provide Him With Accurate Notice as to the Nature of the Seizure and the Process for Seeking Return of His Property.**

A procedural due process inquiry first asks whether the individual was deprived by the government of life, liberty, or property and then "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Robinson v. Wash. Metro. Area Transit Auth.*, 167 F. Supp. 3d 118, 129–30 (D.D.C. 2016) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). There is no dispute that Mr. Mencias was deprived of property—his van and tools—by a state actor—Det. Dailey. Pl.'s Statement ¶¶ 38, 42; Pl.'s Mem. at 17–18; Def.'s Mem. at 16 n.3.

When the government deprives an individual of property, it must provide notice sufficient to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objection" and the notice "must be of such nature as reasonably to convey the required information." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Further, "process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the [interested party] might reasonably adopt to accomplish it." *Small v. United States*, 136 F.3d 1334, 1336 (D.C. Cir. 1998) (quoting *Mullane*, 339 U.S. at 315). Both the Supreme Court and this Court have explained that "reasonable steps" must be taken to properly inform a property owner regarding the seizure of his property so that he "'can pursue available remedies for its return.'" *Brown v. Dist. of Columbia*, 115 F. Supp. 3d 56, 69 (D.D.C. 2015) (quoting *City of West Covina v. Perkins*, 525 U.S. 234, 240–41 (1998)). "[T]here are no bright-line rules regarding how . . . notice must be given or how many details it must include," *Gardner v. Evans*, 811 F.3d 843, 847 (6th Cir. 2016), and "the adequacy of a particular form of

notice requires balancing the 'interest of the State' against 'the individual interest sought to be protected,'" *Jones v. Flowers*, 547 U.S. 220, 229 (2006) (quoting *Mullane*, 339 U.S. at 314). Thus, the analysis requires a fact-based inquiry into whether the "particular method of notice" given was "reasonable" under the "particular circumstances." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988).

Here, Det. Dailey argues only that Rule 41(g) provides an adequate means by which Mr. Mencias could have challenged the continued seizure of his van following the search and the removal of the items of evidentiary value, and that Det. Dailey was not obligated to provide Mr. Mencias with notice of the availability of Rule 41(g). Def.'s Mem. at 18. Had Det. Dailey taken reasonable steps to provide Mr. Mencias with the information he needed to access this remedy, such as informing Mr. Mencias that his van was being seized to allow for a search for evidence and informing Mr. Mencias when the search was over, his argument might have merit. But Det. Dailey did neither of those things. He did not tell Mr. Mencias that his van had been seized to allow for a search for evidence; rather, he told Mr. Mencias that he was taking his van and would keep it unless and until Mr. Mencias provided information to help Det. Dailey find his suspect. He did not inform Mr. Mencias that the search had been conducted and the items of evidentiary value removed. Rather, he left the completed search warrant information inside the van knowing that Mr. Mencias had no access to it.

Moreover, Det. Dailey falsely and misleadingly told Mr. Mencias that the police could sell Mr. Mencias's van and that the only way Mr. Mencias could get it back was to provide information about the suspect. Whatever form or content proper notice must ordinarily include, due process cannot tolerate the provision of false and misleading information. Falsely informing a property owner of the process for recovering his property is neither a "reasonable step" that will enable him

to pursue available remedies, *see Brown*, 115 F. Supp. 3d at 69, nor a step that would be taken by "one desirous of actually informing" the property owner of how to protect his interests. *Mullane*, 339 U.S. at 315. Indeed, courts have recognized in other contexts that the provisions of false information by government actors may violate procedural due process rights.[7]

In addition to misleading Mr. Mencias and giving him false information regarding the process for recovering his property, Det. Dailey failed to provide sufficient notice by (1) providing Mr. Mencias with no information in writing and (2) communicating with Mr. Mencias only in English, a language he knew that Mr. Mencias did not fully understand. Due process usually requires written notice, *Daskalea v. Wash. Humane Soc'y*, 480 F. Supp. 2d 16, 32 (D.D.C. 2007), and courts that have found a state actor's actions to have satisfied due process generally rely on detailed, written notices to support such findings, *see, e.g.*, *Robinson*, 167 F. Supp. 3d at 132 (stating that the plaintiff "was afforded clear notice of the ample process available to him to contest [the decision] . . . In particular, [the notice] clearly incorporate[d] the grievance procedure"); *Brown*, 115 F. Supp. 3d at 69 (finding notice that provided notice of seizure, the legal basis of the seizure, the statute permitting the forfeiture, and the D.C. statutory and regulatory provisions regarding the seizure process to satisfy due process); *City of West Covina*, 525 U.S. at 236–37 (noting that Plaintiffs received written notice, detailing the property seized, who conducted the

---

[7] For example, in the context of an arrest, courts have "recognized a due process right not to be deprived of liberty as a result of fabrication . . . by a government officer." *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014) (internal citations omitted). Additionally, where a person is employed by a government employer, the government violates procedural due process when it "terminates a public employee and makes false or substantially inaccurate public charges or statements that stigmatize the employee." *McGinnis v. Dist. of Columbia*, 65 F. Supp. 3d 203, 223 (D.D.C. 2014).

seizure, which judge authorized the seizure, and whom to contact, at what phone number, for further information, when the city seized their property).

No circumstances present here suggest that the "usual requirement of written notice" be relaxed. *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991). As previously noted, a vehicle is often a person's "most valuable possession" and his "means to earn a livelihood." *Simms*, 872 F. Supp. 2d at 100. Written notice would ensure that in situations where a person receives misinformation—either by mistake or through bad faith—the correct information is provided in a form that can be reviewed personally or by an attorney or other advisor. It is undisputed that Mr. Mencias was never given written notice of his van's seizure. Def.'s Response to Pl. Statement ¶ 41.[8] Further, given that Mr. Mencias lacks facility with English and Det. Dailey communicated with him only in English, written notice would have allowed Mr. Mencias to seek translation or to study the written notice at his own pace. The need for written notice in this context is confirmed by other courts concluding that English-only notification may be sufficient precisely because of the availability of a written document that the non-English speaker can recognize the importance of and have translated. *See, e.g.*, *Nazarova v. I.N.S.*, 171 F.3d 478, 483 (7th Cir. 1999); *Toure v. United States*, 24 F.3d 444, 445–46 (2d Cir. 1994) (per curiam); *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); *Arabaxhi v. Constantine*, No. 99-1186, 1999 WL 1319011, 201 F.3d 426 (1st Cir. Sept. 29, 1999) (per curiam) (unpublished). Again, as previously noted above,

---

[8] Det. Dailey's response contemplates the grand jury subpoena "conceivably" constituting written notice relating to the seizure of the van and the tools. Review of the subpoena itself, however, makes clear that the subpoena contained no information regarding Mr. Mencias's van or tools. Pl.'s Resp. to Def.'s Statement ¶ 81. This is yet another example of Det. Dailey conflating information and documents relating to the investigation into the alleged ADW at El Torogoz with the propriety and need for the continued retention of Mr. Mencias's van and tools.

22

no such document was available to Mr. Mencias. In this case, the provision of only English-language oral notice violated Mr. Mencias's due process rights.

Each of the above actions—failing to inform Mr. Mencias the van had been seized to search for evidence, failing to inform Mr. Mencias the search had concluded, misleading Mr. Mencias to believe the process for retrieving the van was providing information about Luis, falsely telling Mr. Mencias the police could sell his van, and providing only English-language oral notification—interfered with Mr. Mencias's ability to access the remedies available under Rule 41(g). *See Ford v. Turner*, 531 A.2d 233, 238–39 (D.C. 1987). ("The availability of various legal actions through which [Plaintiff] may be able to contest the retention of the [property] does not eliminate the government's obligation to inform her that [it] intended, for a specified reason, to retain the property taken."); *see also Miles v. District of Columbia*, 510 F.2d 188, 192–93 (D.C. Cir. 1975) ("If she had received notice of the Board's final decision, [the plaintiff] . . . could have taken" action to appeal the decision.).

Finally, it remains uncontroverted that Det. Dailey did not provide Mr. Mencias with notice that his van was ready for release until after this lawsuit was filed. Pl.'s Statement ¶ 94. Det. Dailey repeatedly asserts that it was not his "job to inform Plaintiff that the USAO had signed off on the Form PD 81-C. Det. Dailey was not, and is not, a Property Clerk." Def.'s Mem. 19. This point does not absolve Det. Dailey of responsibility for providing notice. Indeed, the applicable MPD General Order provides that "[i]n all cases of property which comes into the possession of this department, it is the responsibility of the [MPD] member who first handles the property to ensure the property is properly . . . processed" and "the impounding [MPD] member shall . . . [b]e responsible for ensuring that all appropriate reports and notifications are made." MPD General Order 601.01, Attached as Exhibit I to Pl.'s Statement, at 2, 28–29. As a result of Det. Dailey's

failure to notify Mr. Mencias, Mr. Mencias was deprived of his property for several more weeks. Det. Dailey was not willing to notify Mr. Mencias that he could have his van and tools back until Mr. Mencias filed a federal lawsuit against him.

### C. Det. Dailey Is Not Entitled to Qualified Immunity on Mr. Mencias's Fifth Amendment Claim.

Due process requires notice reasonably calculated to provide an interested person with the information he needs to protect his interests. *Mullane*, 339 U.S. at 314. The D.C. Court of Appeals long ago reinforced the importance of adequate notice, explaining that "[t]he availability of various legal actions through which [the plaintiff] may be able to contest the retention of the [property] does not eliminate the government's obligation to inform [the plaintiff] that [it] intended, for a specified reason, to retain the property taken." *Ford*, 531 A.2d at 238–39.

Det. Dailey argues that he is entitled to qualified immunity because Mr. Mencias has not shown "how his own failure to pursue available post-deprivation remedies can be imputed onto [Det. Dailey] for purposes of this lawsuit." Def.'s Mem. at 23. As explained above, Det. Dailey interfered with Mr. Mencias's ability to discern and pursue the remedy available under Rule 41(g) because Det. Dailey provided false information regarding the reason the van was seized and how Mr. Mencias could get it back, failed to notify Mr. Mencias both when the search was completed and when the van was finally available for release, failed to provide Mr. Mencias with written notice, and provided oral notice only in English, a language Mr. Mencias does not understand well. Because a reasonable police officer would have known that these acts and omissions violate due process, Det. Dailey is not entitled to qualified immunity. Indeed, if notice that is a mere gesture cannot satisfy due process, false and misleading notice certainly cannot.

## CONCLUSION

For the above-stated reasons and the reasons stated in Mr. Mencias Memorandum in Support of his Motion for Partial Summary Judgment, the Court should grant Mr. Mencias's Motion for Partial Summary Judgment and deny Det. Dailey's Cross-Motion for Summary Judgment.

Respectfully submitted,

/s/ Patrick Llewellyn
Patrick Llewellyn (DC Bar No. 1033296)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW, Suite 312
Washington, DC 20001
Phone: (202) 661-6701
Fax: (202) 662-9634
Email: Patrick.Llewellyn@law.georgetown.edu

/s/ Michael T. Kirkpatrick
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-7728
Email: mkirkpatrick@citizen.org

/s/ Dennis A. Corkery
Dennis A. Corkery (DC Bar No. 1016991)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Email: Dennis_Corkery@washlaw.org

*Attorneys for Plaintiff*

November 14, 2016

25