**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**ERLIN EVER MENCIAS AVILA,**

                Plaintiff,

v.                                          Civil No. 1:15-cv-02135-TSC

**MATTHEW DAILEY,**

                Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**STATEMENT OF UNDISPUTED FACTS**

1. On September 6, 2014, just before 9:30 p.m., a man committed an assault with a deadly
   weapon (ADW) on the sidewalk in front of El Torogoz, a restaurant located at 4231 9th
   Street NW, Washington, D.C. 20011.* Incident/Investigation Report 1–6, attached as Ex.
   A [hereinafter Investigation Report]; *see also* sources cited *infra* ¶¶ 12–15.


**RESPONSE:** The statement is disputed to the extent that no person has been charged with
or convicted of an ADW from that evening. Def.'s Dep., Attached as Exhibit B to Def.'s
Statement, at 89. It is undisputed that there was an altercation outside El Torogoz, a
restaurant located at 4231 9th Street NW, Washington, DC, in the evening of September 6,
2014. Pl.'s Dep., Attached as Exhibit D to Def.'s Statement, at 30–32, 38–39, 44; Answer
to Second Amended Complaint, Doc. 22 ¶¶ 16, 18, 19.

2.  The assailant brandished a knife and threw metal patio furniture at people, one of whom sustained a large laceration to his forehead and lost several teeth. Investigation Report at 5; *see also* sources cited *infra* ¶¶ 12–15.

**RESPONSE:** The statement is disputed as a mischaracterization of the events. Defendant's statement labels Luis as "the assailant," but there were multiple participants in the altercation outside El Torogoz. Camera No. 3[1] at 21:28:15–21:29:05; Camera No. 4 at 21:28:15–21:29:05. It is undisputed that "Luis" was a suspected assailant and was alleged to have brandished a knife. It is also undisputed that Luis threw a stanchion and a chair, with the latter striking a customer.

3.  The assailant fled in a white van driven by Plaintiff Mencias.* Investigation Report at 6; *see also* source cited *infra* ¶ 21.

**RESPONSE:** The statement is disputed as a mischaracterization of the events. Defendant's statement labels Luis as "the assailant," but there were multiple participants in the altercation outside El Torogoz. Camera No. 3 at 21:28:15–21:29:05; Camera No. 4 at 21:28:15–21:29:05. Luis was agitated and wanted to continue fighting, but Mr. Mencias ushered Luis into his van and told him to stop fighting. Pl.'s Dep. at 47–50. It is undisputed

---

[1] Although Det. Dailey references these videos in his statement of facts, he has not provided copies of the videos. Mr. Mencias has uploaded these videos to a website maintained by his counsel at http://instituteforpublicrepresentation.org/2016/11/07/mencias-security-videos/. The videos referred to here are available under the respective links on that page.

that Mr. Mencias drove Luis, a suspected assailant, away from the scene to prevent further

violence. Pl.'s Dep. at 50; Answer to Second Amended Complaint, Doc. 22 ¶ 27.

4.  Defendant Detective Dailey was the lead Metropolitan Police Department (MPD) detective

responsible for investigating this ADW. Def.'s Dep. 18:16–19:10, May 17, 2016, attached

as Ex. B.

**RESPONSE:** This statement is undisputed.

5.  Fourteen months later, after a grand jury investigation, the United States Attorney's Office

for the District of Columbia (USAO) closed its investigation into the ADW.* Def.'s Dep.

86:7–16; E-mail from Kara Traster, Assistant U.S. Attorney, U.S. Attorney's Office for

D.C., to Matthew Dailey, Detective, Fourth Dist., Metro. Police Dep't (Nov. 19, 2015, 1:46

p.m.), attached as Ex. C.

**RESPONSE:** This statement is undisputed.

6.  Plaintiff and the soon-to-be assailant went to El Torogoz after working a construction

project. Pl.'s Dep. 19:8–22:4, 29:17–31:19, July 13, 2016, attached as Ex. D.

**RESPONSE:** The statement is disputed as a mischaracterization of the events. Defendant's

statement labels Luis as "the assailant," but there were multiple participants in the

altercation outside El Torogoz. Camera No. 3 at 21:28:15–21:29:05; Camera No. 4 at 21:28:15–21:29:05. Otherwise, this statement is undisputed.

7. At about 9:27 p.m., Mrs. Coralia Ventura, who owns El Torogoz with her husband, asked a male and female patron to leave the restaurant because she believed they were doing something inappropriate in the bathroom. The man (Luis), wearing an orange shirt, began to argue with Mrs. Ventura in the dining room. Mrs. Ventura gestured Luis to follow her outside. Luis followed. Plaintiff, wearing a white shirt, was standing at the end of the bar near the bathroom. El Torogoz Security Camera No. 2 at 21:27:00, attached as Ex. E [hereinafter Camera No. 2]

**RESPONSE:** The statement is undisputed to the extent the video shows a woman who has been identified as the restaurant owner's wife, Coralia Ventura, walk over to the side of the bar, begin talking to the man identified as Luis, and indicate to Luis and another woman to follow Ms. Ventura out of the restaurant. It is also undisputed that the video shows Mr. Mencias wearing a white shirt and standing at the end of the bar near the bathroom. It is undisputed that other documents and testimony indicate that Ms. Ventura believed Luis and the other woman were doing something inappropriate, but it is disputed that the video shows or establishes this, which is the only evidence upon which Det. Dailey relies for this statement.

8. At about 9:28 p.m., after guzzling down a bottle of beer, Camera No. 2 at 21:26:33, Plaintiff exchanged cash for a new bottle, *id.* at 21:28:01.

**RESPONSE:** It is undisputed that the video shows Plaintiff drink a bottle of beer and pay cash for another bottle of beer.

9.  About 30 seconds later, Plaintiff and others noticed a commotion outdoors and hurried outside. Camera No. 2 at 21:28:35.

**RESPONSE:** The statement is disputed as vague and as a mischaracterization of the video. It is undisputed that video shows Mr. Mencias notice something outside the frame of the camera and go outside the frame of the camera approximately 30 seconds after paying for a beer. It is disputed that the video relied upon shows "a commotion outdoors," but it is undisputed that Mr. Mencias rushed outside when he realized there was a fight outside the restaurant involving Luis. Pl.'s Dep. at 40–41.

10. The footage from the outdoor surveillance cameras depicts Luis gesturing at Mrs. Ventura. El Torogoz Security Camera No. 3 at 21:27:42, attached as Exhibit F [hereinafter Camera No. 3]; El Torogoz Security Camera No. 4 at 21:27:42, attached as Ex. G [hereinafter Camera No. 4].

**RESPONSE:** The statement is disputed. The two videos relied upon first show Ms. Ventura exit the building and then gesture at Luis and the other woman to follow her outside. Camera No. 3 at 21:27:37; Camera No. 4 at 21:27:37. As Luis walks up to Ms. Ventura, she puts her hands on her hips and a conversation ensues. Camera No. 3 at 21:27:40; Camera No. 4 at 21:27:40. The video does not show Luis gesturing at Ms.

Ventura at or near the times indicated by Det. Dailey. *See* Camera No. 3 at 21:27:42; Camera No. 4 at 21:27:42. Further, Luis and Ms. Ventura appear in the distance in the video from Camera No. 3, and Luis's back is turned to Camera No. 4. *See* Camera No. 3 at 21:27:37–21:27:50; Camera No. 4 at 21:27:37–21:27:50. The video does show Luis point twice in the direction of Mr. Ventura *after* Mr. Ventura appears to enter the conversation. Camera No. 3 at 21:27:50, 21:27:56; Camera No. 4 at 21:27:50, 21:27:56.

11. Mr. Ventura, in a white chef's coat, walked outside from the kitchen's side door, appearing intent on an unrelated matter until he saw Luis gesturing at his wife. Luis then moved around the patio and onto the sidewalk, heading toward Mr. Ventura. Camera No. 3 at 21:27:42; Camera No. 4 at 21:27:42–21:28:09.

**RESPONSE**: The statement is disputed to the extent it mischaracterizes the video, and also disputed regarding Mr. Ventura's intent. A man who has been identified as Mr. Ventura exits the restaurant holding a hammer and, approximately 3 seconds after coming out, looks over in the direction of Ms. Ventura and Luis. Camera No. 3 at 21:27:39. Approximately 11 seconds after that, Mr. Ventura appears to enter the conversation between Luis and Mrs. Ventura while pointing at Luis. Camera No. 3 at 21:27:50. Approximately 6 seconds later, Mr. Ventura then gestures toward Luis with the hammer. Camera No. 3 at 21:27:56. Following these actions, Luis then walks from the restaurant's seating patio to the sidewalk and begins walking towards Mr. Ventura. Camera No. 3 at 21:28:10–15. There is nothing from the video indicating Mr. Ventura's intent as he walks out of the restaurant.

12. Plaintiff stood watching on the patio near the doorway while Luis brandished a knife at Mrs. Ventura, Mr. Ventura, and another man who approached and appeared protective of the Venturas. Camera No. 4 at 21:28:39; *see also* Camera No. 3 at 21:28:14–21:28:40.

**RESPONSE:** This statement is disputed. After beginning to walk towards Mr. Ventura, Luis pulls an object from his pocket. Camera No. 3 at 21:28:14. At that point, Mr. Mencias is not standing in the doorway on the patio. Mr. Mencias does not come to stand in the doorway on the patio until approximately 21 seconds after Luis pulls the object from his pants. Camera No. 4 at 21:28:35. When Mr. Mencias enters the doorway on the patio, Luis is approximately 20–30 feet away from Mr. Mencias with his back turned to Mr. Mencias, and there are several people between Luis and Mr. Mencias. Camera No. 4 at 21:28:35; Camera No. 3 at 21:28:35. Approximately 1 to 2 seconds after Mr. Mencias enters the doorway, Luis puts the object back into his pocket and turns in the direction of Mr. Mencias to face another man who is walking towards him. Camera No. 3 at 21:28:37.

13. Seconds later, Luis threw a stanchion at the approaching man. He missed. Camera No. 3 at 21:28:42.

**RESPONSE:** This statement is undisputed.

14. This prompted Plaintiff to hurry around the patio towards Luis. Camera No. 4 at 21:28:45.

**RESPONSE:** This statement is disputed. After Luis throws the stanchion, Mr. Mencias walks around the group of people on the patio onto the sidewalk and begins walking in Luis's direction. Camera No. 3 at 21:28:45–49.

15. Luis then threw a metal patio chair, striking the stanchion's intended target in the face and causing Luis to stumble to the ground. Camera No. 3 at 21:28:46.

**RESPONSE:** It is undisputed that Luis threw a metal patio chair, striking a man in the head. It is disputed that this caused Luis to stumble to the ground. As Luis throws the chair or a second after, Ms. Ventura strikes or pulls Luis, causing him to fall to the ground. Camera No. 3 at 21:28:47–49.

16. Luis got to his feet, and Plaintiff ran between him and the now-bloodied man while Mr. Ventura, who had grabbed an umbrella pole, stood in a defensive posture in front of his wife. Camera No. 3 at 21:28:53.

**RESPONSE:** This statement is disputed. As Luis is getting to his feet, the man who had been hit by the chair and Mr. Ventura charge towards Luis, with Mr. Ventura holding a large metal rod. Camera No. 3 at 21:28:50–52. As they charge at Luis, there are other people standing nearby and some are approaching the altercation. Camera No. 3 at 21:28:50–53. Mr. Mencias jumps in between Luis, the man who was hit by the chair, and Mr. Ventura, and Mr. Mencias is struck by the man who was hit by the chair. Camera No. 3 at 21:28:53. Mr. Mencias raised his hands in a defensive posture and told the crowd:

"Hey, don't fight. This is over." Pl.'s Dep. at 46. After charging at Luis and after Mr.

Mencias intervenes, Mr. Ventura enters a defensive posture. Camera No. 3 at 21:28:55.

17. With Plaintiff by his side, Luis grabbed a metallic object from Plaintiff's van and scraped

it across the sidewalk which created sparks. Camera No. 4 at 21:29:24.

**RESPONSE:** It is undisputed that Luis grabbed a metal object from Mr. Mencias's van

and scraped it across the sidewalk, which created sparks. Camera No. 4 at 21:29:24. It is

disputed that Mr. Mencias was by his side when this occurred. *See* Pl.'s Dep. at 47–50. In

the video relied upon by Det. Dailey, Luis, Mr. Mencias, and several other persons are at

the top of the frame with only their feet visible, Camera No. 4 at 21:29:00, and it is not

apparent from the video who is standing where at the moment the sparks are created.

18. Plaintiff walked around to the driver's side of his white van, moving beyond the camera

frame. Camera No. 4 at 21:29:31.

**RESPONSE:** This statement is undisputed.

19. Luis opened the passenger's door to Plaintiff's van, retrieved an open case of beer, and

slammed the case onto the sidewalk. Camera No. 4 at 21:29:36.

**RESPONSE:** It is undisputed the video shows a person throw a case of cans onto the

sidewalk at the top of the frame.

20. He then picked up a full can from the ground and threw it back down, causing the can to burst before he climbed into the van. Camera No. 4 at 21:29:40.

    **RESPONSE:** It is undisputed that the video shows a person grab one of the cans from the case and throw it onto the ground.

21. Moments later, Plaintiff drove Luis away from the restaurant and the two headed northbound on 9th Street NW.* Camera No. 4 at 21:30:20.

    **RESPONSE:** This statement is undisputed.

22. Plaintiff parked his van a little over a mile away, near Ache Lounge (441 Kennedy Street NW). Pl.'s Dep. 54:18–20; *see also* Investigation Report at 6.

    **RESPONSE:** This statement is undisputed.

23. Plaintiff entered Ache Lounge and did not notice that Luis went somewhere else. Pl.'s Dep. at 55:2–19.

    **RESPONSE:** It is undisputed that Mr. Mencias entered Ache Lounge. It is disputed that Mr. Mencias did not notice that Luis went somewhere else. Mr. Mencias believed that he and Luis were supposed to go to Ache Lounge together, but after they "got out of the

van . . . [Luis] went missing, period." Pl.'s Dep. at 55; *see also* Answer to Second Amended

Complaint, Doc. 22 ¶ 32.

24. From the time Plaintiff drove Luis away from El Torogoz to the time Plaintiff's van was

seized as evidence, members of MPD's Fourth District were dispatched to El Torogoz to

investigate the ADW. Investigation Report at 5–6; *see also* Geiger Dep. 14:8–15:2, July

20, 2016, attached as Ex. H; Jordan Dep. 16:12–17:18, June 28, 2016, attached as Ex. I.

**RESPONSE:** This statement is undisputed.

25. The first responding officers interviewed witnesses. Def.'s Dep. 20:13–21:9.

**RESPONSE:** This statement is undisputed.

26. Defendant Detective Dailey arrived on the scene with Detective William Xanten, and they

joined the officers in interviewing witnesses and in reviewing security camera footage.

Def.'s Dep. 21:11–21:22.

**RESPONSE:** This statement is undisputed.

27. One waitress reported that as she tried to photograph Plaintiff's van, Luis jumped out and

yelled, "I know where to find you, I [am] going to come back for you," before driving away

with Plaintiff. Investigation Report at 5.

**RESPONSE:** This statement is undisputed.

28. She memorized the van's license plate number, and witnesses described the van as white, with the name "D Street Construction" on its side. Investigation Report at 5–6.

**RESPONSE:** This statement is undisputed.

29. MPD Officer Richard Geiger broadcasted the look-out for the van over the radio, and MPD Officers then located the van on the 400 block of Kennedy Street NW. Geiger Dep. 17:19–18:7; Jordan Dep. 22:4–22:19; Investigation Report at 6.

**RESPONSE:** This statement is undisputed.

30. Officers obtained a copy of Plaintiff's driver's license photograph through his vehicle registration information. Investigation Report at 6.

**RESPONSE:** This statement is undisputed.

31. Mrs. Ventura positively identified Plaintiff's photograph as the van's driver. Investigation Report at 6.

**RESPONSE:** This statement is undisputed.

32. At approximately 11:50 p.m., MPD Officers found Plaintiff on foot in the 800 block of
    Kennedy Street NW. Investigation Report at 6.


    **RESPONSE:** This statement is undisputed.


33. Detective Dailey noted that Plaintiff appeared heavily intoxicated. Investigation Report at
    6.


    **RESPONSE:** It is undisputed that Det. Dailey noted this in his Investigation Report. It is
    disputed that Mr. Mencias was "heavily intoxicated." Pl.'s Dep. at 57.


34. He also informed Plaintiff that police needed to speak with him about the altercation at El
    Torogoz. Investigation Report at 6.


    **RESPONSE:** This statement is undisputed.


35. According to Detective Dailey, Plaintiff provided no information as to Luis' identity or
    whereabouts, but he stated that the owner of El Torogoz and other patrons attacked Luis.
    Investigation Report at 6.


    **RESPONSE:** This statement is disputed to the extent it mischaracterizes Mr. Mencias's
    response as withholding information regarding Luis's identity or whereabouts. Mr.

13

Mencias did not have the requested information regarding the identity and whereabouts of Luis. Answer to Second Amended Complaint, Doc 22 ¶ 53; Jordan Dep., Attached as Exhibit F to Pl.'s Statement, at 27; Xanten Dep., Attached as Exhibit E to Pl.'s Statement, at 32.

36. Detective Dailey asked Plaintiff to identify his friend so the police could hear his side of the story, to which Plaintiff responded, "I will never tell you who my friend is; you will have to find him." Investigation Report at 6.

**RESPONSE:** This statement is disputed. Det. Dailey and the other MPD officers asked Mr. Mencias about the incident at El Torogoz and Luis. Mr. Mencias explained that he had not fought at El Torogoz and did not know where Luis was because he had only hired Luis for the day. Pl.'s Resps. to Def. MPD Det. Matthew Dailey's First Set of Interrogs., Attached as Exhibit 1, at 7.

37. Detective Dailey informed Plaintiff that MPD was seizing his van as evidence and transporting it to the Fourth District. Investigation Report at 6; Def.'s Dep. 30:2–15.

**RESPONSE:** It is undisputed Det. Dailey informed Mr. Mencias that his van was being seized and towed. It is disputed that Det. Dailey told him the van was being seized as evidence or that the van was being transported to the Fourth District. Pl.'s Dep. 60, 62, 84; Pl.'s Dep. Errata, Attached to Pl.'s Statement as Exhibit H, Doc. 24-1 at 194; *see also* Answer to Second Amended Complaint, Doc. 22 ¶ 63.

14

38. On September 11, 2014, Plaintiff went MPD's Fourth District Substation (750 Park Road NW). Investigation Report at 11; Jordan Dep. 48:20–49:20.

   **RESPONSE:** This statement is undisputed.

39. He spoke to Officer Justin Jordan about having his van released. Jordan Dep. 49:11–20.

   **RESPONSE:** This statement is undisputed.

40. Officer Jordan explained that if Plaintiff knew information that could help close the case, sharing it with law enforcement would further his interest in getting his van released. Jordan Dep. 49:13–17.

   **RESPONSE:** This statement is disputed as a mischaracterization. Officer Jordan led Mr. Mencias to believe that Mr. Mencias was getting his van back, not going to be interrogated regarding Luis. Pl.'s Dep. 73–74. To the extent Officer Jordan referenced "sharing" information with the police, he told Mr. Mencias that they would give him his van back in exchange for information regarding Luis. Pl.'s Dep. 75–76.

41. Plaintiff agreed to be interviewed, and he and Officer Jordan reconvened at the Fourth District Station Detectives' Office (6001 Georgia Avenue NW). Investigation Report at 11; Jordan Dep. 49:22–50:2.

**RESPONSE:** This statement is disputed as a mischaracterization. Officer Jordan led Mr. Mencias to believe that Mr. Mencias was getting his van back, not going to be interrogated regarding Luis. Pl.'s Dep. 73–74.

42. Plaintiff's interview was videotaped, with audio recorded. Jordan Dep. 55:18–21.

**RESPONSE:** This statement is undisputed.

43. Plaintiff told his interviewers that he only knew the suspect by the name "Luis," and he met Luis the same day as the crime, picking him up in the morning from a Home Depot on Rhode Island Avenue NE as a day-laborer. Investigation Report at 11.

**RESPONSE:** This statement is undisputed, provided that "the crime" referenced is the alleged ADW at El Torogoz.

44. On September 18, 2014, Detective Dailey sent a draft search warrant for Plaintiff's van to Assistant U.S. Attorney (AUSA) John Giovannelli, Deputy Chief of the Superior Court Felony Major Crimes Trial Section. E-mail from Matthew Dailey, MPD Detective, to John Giovannelli, Assistant U.S. Attorney, Deputy Chief of D.C. Superior Court Felony Major Crimes Trial Section, U.S. Attorney's Office for D.C. (Sept. 18, 2014, 1:25 p.m.), attached as Ex. J.

**RESPONSE:** This statement is undisputed.

45. AUSA Giovannelli approved the warrant. E-mail from John Giovannelli, USAO-DC Deputy Chief, to Matthew Dailey, MPD Detective (Sept. 18, 2014, 2:44 p.m.), attached as Ex. K.

**RESPONSE:** This statement is undisputed.

46. A D.C. Superior Court magistrate judge signed the warrant on September 19, 2014. Sep. 19, 2014 Search Warrant and Application in Support 1–3, attached as Ex. L [hereinafter Search Warrant]; Def.'s Dep. 63:9–13.

**RESPONSE:** This statement is undisputed.

47. On September 23, 2014, MPD members executed the search warrant on Plaintiff's van. Investigation Report at 7; Search Warrant at 1.

**RESPONSE:** This statement is undisputed.

48. The van's passenger compartment contained a backpack that appeared to belong to someone other than Plaintiff, with a Honduran passport issued to Josue Nahun Díaz-Matute and other personal items inside. Investigation Report at 7; Def.'s Dep. 66:4–9; *see also* Search Warrant at 1.

**RESPONSE:** This statement is undisputed.

49. MPD Officers seized the Honduran passport, four cans of Heineken beer, and a knife. Def.'s Dep. 66:11–18; *see also* Search Warrant at 1.

   **RESPONSE:** This statement is undisputed.

50. On March 3, 2015, Detective Dailey called Plaintiff after receiving a voicemail message from him. Investigation Report at 9; Def.'s Dep. 90:6 –91:7.

   **RESPONSE:** This statement is undisputed.

51. Detective Dailey again explained to Plaintiff that his van was evidence because it was used in the commission of a crime that was under investigation. Investigation Report at 9; Def.'s Dep. 92:20–93:5.

   **RESPONSE:** This statement is disputed. During the phone call, Det. Dailey asked Mr. Mencias for information about the identity and whereabouts of Luis, and Mr. Mencias again told Det. Dailey that he did not have such information. Answer to Second Amended Complaint, Doc. 22, ¶ 122; *see also* Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 79. Additionally, Det. Dailey told Mr. Mencias that the police could sell Mr. Mencias's van if he didn't provide the police with information about Luis. Pl.'s Dep. 83–84.

52. He also explained to Plaintiff that the van could only be released with the USAO's approval. Investigation Report at 9; Def.'s Dep. 92:20–93:22; *see also* Giovannelli Decl. ¶¶ 3–7, attached as Ex. M.

**RESPONSE:** This statement is disputed. Det. Dailey did not tell Mr. Mencias that his van could only be released with the USAO's approval. Pl.'s Dep. 85.

53. Detective Dailey knew that the AUSA assigned to this case was leading the criminal investigation by grand jury, and that Plaintiff's van remained classified as evidence under the prosecutor's discretion. Def.'s Dep. 79:17–81:19, 86:1–88:19, 105:6-13; *see also* Giovannelli Decl. ¶¶ 3–7.

**RESPONSE:** It is undisputed that Det. Dailey requested a subpoena for Mr. Mencias to appear before a grand jury and that grand jury investigations are led by the AUSA assigned to the case. It is disputed that the van was "classified" as evidence by the prosecutor. Rather, the van was classified as "evidence" by the police at the time of the seizure. MPD Form PD 81, Attached as Exhibit K to Pl.'s Statement (classifying Mr. Mencias's van as evidence); Def.'s Dep. at 29. The majority of the deposition testimony cited by Det. Dailey relates only to the general characteristics of the grand jury investigation into the alleged ADW at El Torogoz, *see* Def.'s Dep. 86–88, 105, and the remainder indicates that a supposed "evidentiary hold" exists on property in the absence of a completed PD 81-C form, *see* Dailey Depo. 79–81. The preparation of a PD 81-C form is the responsibility of

the MPD member. MPD General Order 601.01: Recording, Handling and Disposition of Property Coming into the Custody of the Department, Attached as Exhibit I to Pl.'s Statement, at 26. Further, the USAO-DC Declaration cited by Det. Dailey pertains only to the disposition of seized property and neither confirms nor denies the existence of a grand jury investigation in this case or any classification of evidence in this case. *See* USAO-DC Decl., Attached as Exhibit B to Pl.'s Statement, ¶¶ 3–7.

54. On March 4, 2015, AUSA Christopher Bruckmann e-mailed Detective Dailey a subpoena for Plaintiff to appear and testify before the grand jury.* E-mail from Christopher Bruckmann, Assistant U.S. Attorney, U.S. Attorney's Office for D.C., to Matthew Dailey, MPD Detective (Mar. 4, 2015, 7:30 p.m.), attached as Ex. N.

**RESPONSE:** It is undisputed that on March 4, 2015, Mr. Bruckmann emailed Det. Dailey a subpoena for Plaintiff to appear and testify before the grand jury, but Mr. Bruckmann did so at Det. Dailey's request. Answer to Second Amended Complaint, Doc. 22 ¶ 127; Def.'s Dep. 96.

55. Detective Dailey served Plaintiff a subpoena that indicated an appearance date in March 2015, but USAO later rescheduled this date for May 2015. Def.'s Dep. 98:2–4, 109:14– 110:10.

**RESPONSE:** It is undisputed that Det. Dailey served Mr. Mencias a subpoena to appear before the grand jury in March 2015. It is disputed that the appearance was rescheduled to

May 2015. On March 13, 2015, Mr. Mencias appeared as instructed by the subpoena and was assisted with filling out an application for appointment of counsel, which is borne out by the fact the form for the payment of witness fees and the appointment of counsel forms are dated March 13, 2015. Certificate for Emergency Payment of Witness Fees, Attached as Exhibit 2; Application for the Appointment of Counsel by Material Witness, Attached as Exhibit 3; *see also* Def.'s Resp. to Pl.'s Statement ¶ 81.

56. In May 2015, AUSA Kara Traster replaced AUSA Bruckmann as the prosecutor.* E-mail from Kara Traster, AUSA, to Matthew Dailey, MPD Detective (May 13, 2015, 1:12 p.m.), attached as Ex. O.

**RESPONSE:** This statement is undisputed.

57. AUSA Traster consulted with Detective Dailey throughout the grand jury investigation.* Def.'s Dep. 109:14 –110:10, 107:4–109:7.

**RESPONSE:** This statement is disputed to the extent it suggests frequent consultation between Ms. Traster and Det. Dailey regarding the alleged ADW at El Torogoz. Det. Dailey provided only two e-mail exchanges between himself and Kara Traster in this time period that discuss this case, in passing, in the context of many other cases. *See* Def.'s Ex. O; Def's Ex. P. Moreover, Det. Dailey conceded that "this was not a particularly active investigation." Def.'s Dep. at 112.

21

58. On September 15, 2015, Detective Dailey e-mailed AUSA Traster for an update on their shared cases, including a specific reference to the ADW at El Torogoz.* E-mail from Matthew Dailey, MPD Detective, to Kara Traster, AUSA (Sept. 15, 2015, 8:44 p.m.), attached as Ex. P.

   **RESPONSE:** This statement is undisputed.

59. AUSA Traster responded, "Can we talk tomorrow [morning]? I definitely want to move forward with these cases."* E-mail from Kara Traster, AUSA, to Matthew Dailey, MPD Detective (Sept. 15, 2015, 9:45 p.m.), attached as Ex. P.

   **RESPONSE:** This statement is undisputed.

60. USAO has withheld nonpublic investigatory records and correspondence between the USAO and MPD regarding this investigation. Letter from Damon Taffe, Assistant U.S. Attorney, U.S. Attorney's Office for D.C., to Michael Kirkpatrick, Inst. for Pub. Representation, Georgetown Univ. Law Ctr. (Apr. 26, 2016), at 2, attached as Ex. Q.

   **RESPONSE:** This statement is undisputed.

61. Likewise, Defendant is unable to disclose any grand jury matter. Def.'s Dep. 85:14–86:5.

**RESPONSE:** This statement is disputed as an improper legal conclusion. Counsel for Det. Dailey instructed him "not to provide any specific details relating to the underlying grand jury investigation," and Det. Dailey answered questions "without going into details" during his deposition. Def.'s Dep. at 85–86. Whether Det. Dailey is "unable to disclose" this information is not a factual assertion but rather a legal issue for the Court to determine.

62. On November 19, 2015, AUSA Traster e-mailed Detective Dailey: "Re the vehicle in the ADW case. Can you send me a PD-81C to sign off? Per John Giovanelli, we've closed out the case and the USAO-DC will sign off on releasing the car."* E-mail from Kara Traster, AUSA, to Matthew Dailey, MPD Detective (Nov. 19, 2015, 1:46 p.m.), attached as Ex. R.

**RESPONSE:** This statement is undisputed.

63. On November 27, 2015, Detective Dailey e-mailed AUSAs Traster and Giovanelli the property release Form PD-81C so that USAO could certify that it no longer needed Plaintiff's property as evidence for the prosecution of the ADW. E-mail from Matthew Dailey, MPD Detective, to John Giovannelli, USAO-DC Deputy Chief (Nov. 27, 2015, 5:01 p.m.), attached as Ex. S.

**RESPONSE:** This statement is undisputed.

64. Detective Dailey also attached a draft warrant for Plaintiff's arrest, suggesting: "He is an accessory to the crime to include obstructed justice after the fact. . . . Can we go this way?" *Id.*

   **RESPONSE:** The statement is undisputed.

65. AUSA Giovanelli declined to sign off on the arrest warrant. Def.'s Dep. 122:15–17.

   **RESPONSE:** This statement is undisputed.

66. Detective Dailey has been a member of MPD for over fifteen years and a detective in the Fourth District for the past ten. Def.'s Dep. 15:6–15.

   **RESPONSE:** This statement is undisputed.

67. He is responsible for investigating violent assaults and robberies, as well as responding to all Part 1 offenses. Def.'s Dep. 17:21–18:12.

   **RESPONSE:** This statement is undisputed.

68. In performing these duties, Detective Dailey regularly seizes property as evidence. Def.'s Dep. 39:12–14.

**RESPONSE:** This statement is undisputed.

69. When seized property is no longer needed as evidence in a criminal case, Detective Dailey obtains the signature of approval from the appropriate prosecuting authority on MPD's property release form, the PD 81-C.* Def.'s Dep. 37:18–38:17, 74:19–75:5; *see* PD 81-C, attached as Ex. T; *compare* Metropolitan Police Department General Order 601.01: Recording, Handling & Disposition of Property Coming into the Custody of the Department, at 26 (describing detectives' duties in subpart F(4)), attached as Ex. U [hereinafter GO 601.01], *with* GO 601.01 at 32 (describing element property officers' duties in subpart A).

**RESPONSE:** This statement is disputed as a mischaracterization of the process for releasing property seized as evidence. When MPD makes the decision to release seized property, an MPD member will present a PD Form 81-C to a supervisor in the USAO-DC to sign indicating that the USAO-DC has no objection to the release and the property is not needed to be retained as evidence. USAO-DC Decl. ¶¶ 3–7. Additionally, MPD drives the decision on when to release property seized as evidence, and MPD is the ultimate decision maker as to the disposition of property. Letter from USAO-DC, Attached as Exhibit C to Pl.'s Statement, at 3.

70. This process confirms that the USAO has no objection to the release and that "said property is not needed to be retained as evidence. These matters are handled on a case by case basis."* Giovannelli Decl. ¶¶ 3–7.

**RESPONSE:** This statement is undisputed.

71. Detective Dailey's final action with respect to Plaintiff's property was to forward the completed PD 81-C to the Fourth District Property Officer and upload this information to his electronic case file.* Def.'s Dep. 126:10–127:15.

**RESPONSE:** This statement is undisputed.

72. Property Officers are "responsible for the security and safekeeping of property held at their elements and for the proper transfer of property to the Property Control Branch." Pl.'s Ex. I at 32. It is "the responsibility of the element's property officer to notify owners relative to the recovery of property whenever the recovering officer or station clerk has been unable to make such notification." *Id*.; *see also* Def.'s Dep. 104–105.

**RESPONSE:** This statement is disputed to the extent it indicates Property Officers are the *sole* parties responsible for providing notice of the availability of property to property owners. MPD General Order 601.01 explains that MPD officers and detectives retain responsibility for property held by the Property Clerk, including responsibility for the requisite notifications related to the property held. MPD General Order 601.01 at 2, 28–29 (providing that, *e.g.*, "In all cases of property which comes into the possession of this department, it is the responsibility of the [MPD] member who first handles the property to ensure the property is properly . . . processed" and "the impounding [MPD] member

shall . . . [b]e responsible for ensuring that all appropriate reports and notifications are made."). Additionally, the portion relied upon by Det. Dailey places the notification responsibility on the Property Officer only where "the recovering officer . . . has been unable to make such notification." *Id.* at 32.

73. Detective Dailey is not a Property Officer.\* Def.'s Dep. 15:6–15; *see also id.* at 104:13– 105:5.

**RESPONSE:** This statement is undisputed.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS RELEVANT TO HIS FIFTH AMENDMENT CLAIM

74. On the night Mr. Mencias's van was seized, Det. Dailey told Mr. Mencias that his van was going to be towed, but Det. Dailey did not state that the van was being seized as evidence or to allow for a later search for evidence as to the identity of the suspect. Answer to Second Amended Complaint, Doc. 22 ¶ 56; Pl.'s Dep. at 60, 62, 84.[2]

75. On the night Mr. Mencias's van was seized, Det. Dailey and the other MPD officers told Mr. Mencias that he might avoid having his van towed, or get it back sooner, if he provided

---

[2] In responding to Plaintiff's Statement of Undisputed Facts, Det. Dailey improperly cited to Mr. Mencias's uncorrected deposition testimony for the proposition that Mr. Mencias was told the night his van was seized that it was seized as evidence of a crime. *See* Def.'s Resp. to Pl's Statement ¶ 36 (citing Pl.'s Dep. at 60–61). However, the corrected version of Mr. Mencias's deposition testimony properly states that the police "claimed at a later time" the van was evidence of a crime. Pl.'s Dep. Errata, Attached to Pl.'s Statement as Exhibit H, Doc. 24-1 at 194. This is confirmed by the remainder of Mr. Mencias's deposition. *See* Pl.'s Dep. at 62, 84.

information that would help the police apprehend Luis. Xanten Dep. at 33–34; Pl.'s Dep. at 62; Def.'s Dep. at 30.

76. On the night Mr. Mencias's van was seized, Det. Dailey and the other MPD officers spoke to Mr. Mencias in English and there was no translation into Spanish. Pl.'s Resps. to Def. MPD Det. Matthew Dailey's, Attached as Exhibit 1 at 7.

77. At the time his van was seized, Mr. Mencias was not provided with any documents related to the seizure of his van and tools. He was not provided with a receipt, or a case number, or any written information indicating that the van had been seized as evidence. Answer to Second Amended Complaint, Doc. 22 ¶ 63.

78. Following Det. Dailey's search of the van on September 23, 2014, Det. Dailey did not provide Mr. Mencias with a copy of the executed search warrant; instead, Det. Dailey claims to have left a copy inside the van, even though he knew that Mr. Mencias did not have access to the van. Det. Dailey did not inform Mr. Mencias that his van had been searched and items removed until after Mr. Mencias filed this lawsuit. Answer to Second Amended Complaint, Doc. 22 ¶¶ 104–107.

79. On or about March 3, 2015, Mr. Mencias spoke to Det. Dailey by telephone and inquired about the process for seeking return of his van and tools. Det. Dailey again told Mr. Mencias that the van and tools would be returned only if Mr. Mencias provided information about Luis, and Det. Dailey also told Mr. Mencias that his van and tools could be sold at

auction if Mr. Mencias did not provide the requested information. Answer to Second Amended Complaint, Doc. 22 ¶ 122; Pl.'s Dep. at 83–84.

80. In March 2015 when Mr. Mencias and Detective Dailey spoke by telephone, Det. Dailey spoke to Mr. Mencias in English only and there was no translation into Spanish. Pl.'s Dep. at 84.

81. Mr. Mencias was not provided with any written notice regarding the seizure of his van and tools until after this lawsuit was filed. The subpoena for Mr. Mencias to appear before a grand jury in March 2015, and the related documents, do not mention the seizure of Mr. Mencias's van and tools. Answer to Second Amended Complaint, Doc. 22, ¶ 63; Grand Jury Subpoena and Cover Letter, Attached as Exhibit 4.

82. Mr. Mencias's van and tools were available for release as of about November 26, 2015, but Det. Dailey did not inform Mr. Mencias that his van and tools were available until January 7, 2016. Answer to Second Amended Complaint, Doc. 22 ¶¶ 4, 176, 179, 242.

Respectfully submitted,

/s/ Patrick Llewellyn
Patrick Llewellyn (DC Bar No. 1033296)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW, Suite 312
Washington, DC 20001
Phone: (202) 661-6701
Fax: (202) 662-9634
Email: Patrick.Llewellyn@law.georgetown.edu

/s/ Michael T. Kirkpatrick
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-7728
Email: mkirkpatrick@citizen.org

/s/ Dennis A. Corkery
Dennis A. Corkery (DC Bar No. 1016991)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Email: Dennis_Corkery@washlaw.org

*Attorneys for Plaintiff*

November 14, 2016

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ERLIN EVER MENCIAS AVILA,** | |
| Plaintiff, | |
| v. | |
| **METROPOLITAN POLICE DETECTIVE** **MATTHEW DAILEY,** | Civil No. 1:15-cv-02135-TSC |
| and | |
| **FOUR UNIDENTIFIED METROPOLITAN** **POLICE DEPARTMENT OFFICERS,** | |
| Defendants. | |

**PLAINTIFF'S RESPONSES TO DEFENDANT MPD DETECTIVE MATTHEW**
**DAILEY'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Erlin Ever Mencias

Avila provides the following responses to Defendant Metropolitan Police Detective (MPD)

Matthew Dailey's interrogatories.

**GENERAL STATEMENTS**

The information supplied in these responses is not based solely upon the knowledge of the

executing party, but includes the knowledge of the party's agents, representatives, and attorneys,

unless privileged. The word usage and sentence structure is that of the attorneys who in fact

prepared these responses, and the language does not purport to be the exact language of the

executing party. The Interrogatories have been interpreted and answered in accordance with the

applicable court rules of procedure, plain English usage, and to the extent not specifically

challenged by objection, the definitions and instructions included with the Interrogatories.

**INTERROGATORY NO. 5**

Describe in detail *in your own words* your interactions and communications with Defendant Dailey or any other MPD official on September 6, 2014, and include in your answer a description of how this interaction ended as well as any statements by you, Defendant Dailey, or any other MPD official on scene.

**ANSWER**

Plaintiff objects to this interrogatory as overly broad and insofar as it asks for irrelevant information. Plaintiff further objects to the requirement that Plaintiff's answer be in his own words on the basis that he has the right to assistance from counsel and, by his signature, has verified the truth of these answers under oath. Subject to and without waiving these objections, Plaintiff answers as follows:

When I left Ache Lounge, I walked toward Georgia Avenue intending to take a taxi home because I did not want to drive. Several officers, including MPD Officer Justin Jordan, questioned me in the 800 block of Kennedy Street, NW. The MPD officers spoke to me in English, and there was no translation into Spanish. As best as I recall, they asked me about the incident at El Torogoz, and I explained that I had not fought anyone but that the restaurant owner and other patrons attacked the man I had hired that morning to work with me that day. They asked me where Luis was. I told them that I did not know where Luis was and that I had no reason to look for Luis because I had merely hired him for only that day, so if the police needed to find him, they would need to look for him. During my interaction with the MPD officers, a bystander, Jose Romero, approached the MPD officers and objected to their behavior towards me. Officer Jordan then said the police were going to tow my van, but they did not explain why they were towing it, where they were towing it to, or how I could get it back, except that I needed to give them information about

Luis and his whereabouts. At the end of my interaction with the MPD officers when my van was seized, I was told to leave. They did not provide me with any documents.

## INTERROGATORY NO. 6

Describe in detail any communications you had with any member of MPD following the September 6, 2014 seizure of your van and include in your answer the dates of these communications, the identities of the MPD officials that you communicated with, how you communicated with them (e.g. by phone or in person), where you were when these communications took place, the substance of these communications, and any statements by you or any member of MPD.

## ANSWER

Plaintiff objects to this interrogatory as overly broad and insofar as it asks for irrelevant information, because it is not limited to communications relating to the subject matter of this case and, if read literally, would include all communications with any member of MPD no matter the subject. Plaintiff further objects to the extent that this interrogatory includes communications that are protected by attorney-client privilege or the attorney work product privilege. The response below includes communications that Plaintiff's counsel had with third parties on Plaintiff's behalf that are not privileged. The inclusion of counsel's communication does not waive privilege for any communications from counsel to Plaintiff or among counsel about these communications. Subject to and without waiving these objections, Plaintiff answers as follows:

On or about September 10, 2014, I visited the Fourth District police station on Georgia Avenue to ask about my van, and I was instructed to go to the Park Road station because the officer who had taken my van was there. I then went to the Park Road station, but I was told to come back the next day. On September 11, 2014, I returned to the Park Road station with Olvin Nuñez, and

and that would allow me to take on projects that would pay as much as before my property was seized. I was limited in the work I could do by not having all of my tools. During this period of self-employment from about August 2014 to about May 2015, I generally hired assistants to help with my projects at a cost of approximately $500 per week, which came out of the income I describe above.

From on or about May 2015 until today, I have been employed by GL Barnhart Construction Capitol Hill, located at 518 10th Street, NE, Washington, DC, 20002. I earn $43.50 an hour and pay an assistant between $15 and $17 an hour, resulting in about a wage of approximately $27 an hour for myself. I work approximately 40 to 45 hours a week.

Respectfully submitted,

/s/ Michael T. Kirkpatrick
Michael T. Kirkpatrick
D.C. Bar No. 486293
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue, Suite 312
Washington, DC 20001
Phone: (202) 662-9593
Fax: (202) 662-9634
Michael.Kirkpatrick@law.georgetown.edu

/s/ Patrick D. Llewellyn
Patrick D. Llewellyn
Georgia Bar No. 235565
*Admitted Pro Hac Vice*
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue, Suite 312
Washington, DC 20001
Phone: (202) 661-6701
Fax: (202) 662-9634
Patrick.Llewellyn@law.georgetown.edu

/s/ Dennis A. Corkery
Dennis A. Corkery
D.C. Bar No. 1016991
Washington Lawyers' Committee for

Civil Rights and Urban Affairs
11 Dupont Circle, Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Dennis_Corkery@washlaw.org

May 4, 2016                          *Attorneys for Plaintiff*

## CERTIFICATION

I certify under oath that the foregoing answers to interrogatories have been read to me in Spanish and are true to the best of my knowledge.

_____
Erlin Ever Mencias Avila

# Exhibit 2

A 849825

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Washington, D.C.

## CERTIFICATE FOR EMERGENCY PAYMENT OF WITNESS FEES

---

### SECTION I.   COURT DATA  (PLEASE PRINT)

Payment Amount: $ _____

**Name of Case:** JJO

**Case Number(s):** I 185 15

**Name of Claimant:** Eclo Avila

**Social Security Number:** ▮▮▮ - 1979

**Date of Birth (MM/DD/YYYY):** ▮▮▮ 1979

**Address**
Home: (Number, Street, City, State and Zip Code)
3106 Kelliher Rd
Business: (Number, Street, City, State and Zip Code)
Hyattsville MD 20782

**Witness for:**
Local: ✓   Out of State: _____
☐ Attorney General
☒ U.S. Attorney
☐ Indigent Defendant (Respondent)

**Telephone Numbers**
Home: 202-200-0099   Mobile:

**Debit Card Information:**
Card Number _____
Account Number _____
Initials _____  Date _____

---

### SECTION II.   DATE AND TIME OF APPEARANCE

| ARRIVAL | | REMAINED UNTIL | EXCUSED UNTIL | |
|---|---|---|---|---|
| Date | Time | Time | Date | Time |
| 3-13-15 | 9:30 AM/PM | 10:15 AM/PM | AM/PM | AM/PM |

**NOTICE: ANY PERSON OBTAINING MONEY THROUGH THE FILING OF A FALSE CLAIM IS PUNISHABLE IN ACCORDANCE WITH TITLE 22, SECTIONS 3811 AND 3812 OF THE DISTRICT OF COLUMBIA CODE, AND UPON CONVICTION SHALL BE FINED NOT MORE THAN $1,000.00, OR IMPRISONED FOR NOT MORE THAN ONE YEAR, OR BOTH.**

---

### SECTION III.   CERTIFICATE

I, the undersigned, hereby certify that I was compelled to appear in this court as a witness for the parties as indicated above; and that I  ☐ am  ☐ am not (check one) an employee of the United States or District of Columbia Government; and that I have not previously requested nor received payment for this date and time; and that I am not being paid for any service other than as a witness.

**Signature of Claimant:**   **Date:** 3 15 15

---

### SECTION IV.   VERIFICATION

In accordance with provision of Title 15, Section 714, District of Columbia Code, the claimant attended as a witness in the above entitled case.  I certify that to the best of my knowledge no prior certification for attendance on this date has been made by any attorney and that the claimant is entitled to a witness fee for the date and time claimed.

**Signature of Attorney:**

| | PROSECUTOR | | DEFENSE COUNSEL | | |
|---|---|---|---|---|---|
| | U.S. Atty. | Atty. Gen. | PDS | CJA | Other |
| | ✓ | | | | |

**Attorney's Name Printed:** Christopher Brockman

**Unified Bar No.** 491136   **Deputy Clerk's Verification:**   **Date:** 3 13 15

---

**NOTICE:**
1. US Attorney's and the Defense Witnesses traveling a distance of 25 miles or greater must have preapproval for travel reimbursement from the US Attorney's Office or the Judge respectively. Please complete additional forms in Room C195 at 500 Indiana Avenue, N.W.
2. Witnesses must present legal identification, a subpoena or a certification letter to be paid for this claim.

MENCIAS 000004

# Exhibit 3

*3*

# Application for the Appointment of Counsel
# By Material Witness

**PART A**   *(to be completed by the U.S. Attorney's Office)*

In the criminal case Grand Jury Original In re ADW, I-04B5-15, the defendant

is  /  **(is not)**   (circle one) represented by the Public Defender Service (PDS).

*If no, please provide the following additional information:*

1_  Crime with which the defendant is charged:___not yet charged (ADW)

2_  Whether the defendant is represented by PDS in any other case pending in the D.C. Superior
Court:  __No___

3_  Whether any other witnesses in this case are represented by PDS:_No_

**PART B**   *(to be completed by Applicant)*

I_Erlin Avila _, having been summoned/ subpoenaed to give testimony or other evidence before the Grand Jury

of the D.C. Superior Court on March 13, 2015, in the above case, request the Chief Judge of the Superior Court to appoint

counsel to advise and assist me in appearing before the Grand Jury.

In support thereof, I say the following:

1_  In custody:___No_____  (yes or no)

2_  Address:  __3106 Kelliher Rd, Hyattsville, MD, 20782

3_  Age:  ___35_____

4_  Employed: _part-time____  (yes or no) Take home income: _$2500_____

5_  Rent or own: ___Rent_____  Rent or mortgage paid per month:__$1362

6_  Number of dependents (i.e., minor children, spouse, disabled relatives, etc.) that I regularly
support:_3

7_  Savings: __$600_____

8_  All other income per month:___0_____

9_  All property owned and its value: 2 vans, tools total   $17,000

### Spanish speaking attorney requested

Under pain and penalty of perjury, I swear/affirm the aforementioned to be true and accurate.

Signed:_____                    Date: 03—13—15

4
especial

## CJA DEFENDANT ELIGIBILITY RECOMMENDATION

| | | | | | |
|---|---|---|---|---|---|
| **Client Name:** | MENCIAS AVILLA, ERLIN | **Dependents:** 2 | | **Location:** Cellblock | |
| **Lockup Number:** | | **Spouse:** Yes | | **Interview Date:** 03/13/2015 | |
| **List Date:** | 3/13/2015 | **Family Size:** 4 | | **Charge:** Advice to witness (M) | |

---

**Eligibility**

| | | | | | |
|---|---|---|---|---|---|
| Gross Monthly Income: Work | | 2600.00 | **Standard Amount Family Size (C):** | | $3,773.00 |
| Gross Monthly Income: Other | + | 600.00 | **Standard Offense Amount:** | + | $2,000.00 |
| **Total Monthly Income (A):** | = | 3200.00 | **Total (D):** | | $5,773.00 |
| Liquid Assets: | + | 0.00 | | | |
| Other Assets: (1/4 equity) | + | $0.00 | **Eligibility Determination:** | | |
| **Total Assets:** | = | $3,200.00 | | | |
| Monthly Extraordinary / Medical / Other Expenses: | - | 0.00 | ☐ Unknown Income/Assets<br>☐ Defendant Refused Interview<br>☒ Defendant Sworn | | |
| **Total Available Monthly (B):** | = | $3,200.00 | | | |

**Eligible**

**WARNING:** You must report to the Criminal Justice Act Office any change in financial circumstances which might affect your eligibility.  A false or dishonest answer to a question on this form may be punishable by fine up to $1,000.00 or imprisonment up to one year, or both D.C. § 2.1602.

I, the undersigned defendant, parent or guardian, being duly sworn, depose and swear that the information which I have provided is true to the best of my belief.

Defendant _[signature]_                    Interviewer _[signature]_

                                                      Notary Public

---

**Contribution Calculations**

| | |
|---|---|
| Total Monthly Income (A) - Standard Amount (C) | |
| Monthly payment of Previous CJA-Loan | - |
| Subtotal | |
| Felony (6) Other (3) | x |
| Assets (Liquid + Other) | + |
| Total Contribution Capability | |

---

**Contribution (Offense amount is the maximum contribution amount)**

Contribution amount per week      # of weeks      Total Contribution

                                            x

---

**Notes:** SPOUSE UNEMPLOYED, CHILD- 2, DEFENDANT EMPLOYED- 2,600 MONTHLY, BANK- 600, PROPERTY- NA (DEFENDANT CELL# 202 200 0099)

_Spanish Speaking attorney requested_

Created By:  PStraw 3/13/2015 11:03:49 AM          Last Updated By:  PStraw 3/13/2015 11:06:45 AM

4-7-2015 returned
spoke also with Rebecca Richards

MENCIAS000006

# Exhibit 4



U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

March 4, 2015

Erlin Ever Mencias Avilla
3106 Kelliher Rd
Hyattsville, MD

Re: In re ADW
Criminal Case No. 1-485-15

Dear Erlin Ever Mencias Avilla:

A Superior Court Grand Jury is currently conducting a criminal investigation regarding the above-referenced case. I am the prosecutor assigned to this case, and it is my understanding that you may have knowledge or information relevant to the Grand Jury's investigation.

On behalf of the Grand Jury, I have enclosed a subpoena which requires you to appear as a witness before the Grand Jury on MARCH 13th, 2015, at 9:30 The Grand Jury meets on the **SECOND FLOOR** of the Judiciary Center Building, which is located at 555 4th Street, N.W., in the District of Columbia. Although parking is available near the Judiciary Center Building, space is limited. Accordingly, I recommend that you consider traveling by public transportation. For your convenience, the Judiciary Square Metro stop on the Red Line is only one block from the Judiciary Center Building. The U.S. Attorney's Office has a child waiting room that can care for children ages 6 weeks to 12 years, free of charge, while you are in the Judiciary Center Building.

When you arrive at the Judiciary Center Building, please show this letter, the enclosed subpoena, and some form of identification to the security guards at the front desk. It would be preferable for you to bring identification that includes your photograph, since you are entitled to receive a payment voucher for your Grand Jury appearance and it is easier to process the voucher with photographic identification. After you register with the guards, kindly take the elevator to the second floor and check in with the receptionist. The receptionist will inform me that you are here, and I will come out and greet you personally.

To help prepare you for your testimony, I would like to meet with you in my office before you testify. Many witnesses find that it is useful to meet with the prosecutor prior to testifying. At the meeting, I can advise you about Grand Jury procedures, answer any questions you have, and we can

discuss your expected testimony. An ideal time for our meeting would be 9:00 that same day. In hopes that you are agreeable to meeting with me, I have scheduled an appointment to meet with you in my office at that time. My office is located in the same building where the Grand Jury meets, in room 3634 on the 3rd floor.

Please bear in mind that, while the office appointment I have scheduled to prepare you for your testimony is optional, you are required by the subpoena to appear for testimony before the Grand Jury as scheduled. If you have any questions, please do not hesitate to telephone me at (202) 202-252-6876.

Thank you for your cooperation, and I look forward to meeting you soon.

Sincerely,

Ronald C. Machen Jr.
United States Attorney


_____/s/_____

By:     Christopher Bruckmann
        Assistant United States Attorney

# Superior Court of the District of Columbia
## CRIMINAL DIVISION
## SUBPOENA

Case No. I-485-15

In re ADW

To: Erlin Ever Mencias Avilla, 3106 Kelliher Rd, Hyattsville, MD

YOU ARE HEREBY COMMANDED:

To appear before the Criminal Division Grand Jury __2ND FLOOR__ of the Superior Court of the District of Columbia, Judiciary Center, 555 Fourth Street, N.W., Washington, D.C., on the 13th day of MARCH, 2015, at 9:30 as a witness for the Grand Jury.

☐   __Addendum attached for items to bring with you.__

WITNESS, the Honorable Chief Judge of the Superior Court of the District of Columbia, and the seal of said Court this 4th day of March, 2015.

DET. DAILEY                    4th

Officer in Charge              District

Clerk, Superior Court
of the District of Columbia

ℳ Christopher Bruckmann

Attorney for Government

Phone No.   (202) 202-252-6876

---

### NOTICE

This subpoena requires that you appear, at the date and time indicated, to answer questions truthfully before a grand jury. The grand jury is located on the second floor of the Judiciary Center, 555 Fourth Street, NW.  At the same location are the offices of the United States Attorney, the prosecutors who are charged with presenting this case to the grand jury. The prosecutors, with or without the assistance of law enforcement officers, may seek to speak with you about your testimony or what you know about the case or to explain to you why you are being asked to testify. It is an essential part of their job to gather as much information as they can in order to enforce the laws of the District of Columbia effectively. You should understand, however, that any such interview is voluntary and is not compelled by this subpoena. Should you agree to an interview, you have the right to terminate the interview at any point. You are encouraged to speak to an attorney about your rights as a witness.

Authorization as required by D.C. Code § 14-307 and *Brown v. U.S.*, 567 A. 2d 426 (D.C. 1989), is hereby given for issuance of subpoena for medical records.

|  |  |
|---|---|
| Date | Judge |

---

### RETURN ON THIS SUBPOENA IS REQUIRED ON OR BEFORE THIS DATE:

☐ I hereby certify that I have personally served, or have executed as shown in "REMARKS," the above subpoena on the individual at the address below.

| Name and Title of Individual Served | Address (If different than shown above) |
|---|---|
|  |  |

☐ I hereby certify that, after diligent investigation, I am unable to locate the individuals, company, corporation, etc., named in above subpoena for the reason(s) as shown in "REMARKS".

| Date(s) of Endeavor | Date and Time of Service |
|---|---|
|  |  |
| REMARKS | Signature of Title of Server |