# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERLIN EVER MENCIAS AVILA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-cv-2135 (TSC) |
| | ) | |
| | ) | |
| MATTHEW DAILEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant Matthew Dailey has moved, pursuant to Federal Rule of Civil Procedure 60(b), to vacate judgment (ECF No. 97 ("Def.'s Vacatur Mot.")). Defendant asks the court to vacate its original and reconsidered summary judgment decisions, in which it held, in part, that Defendant's actions violated Plaintiff Mencias Avila's Fourth Amendment rights as a matter of law. For the reasons set forth below, Defendant's motion will be DENIED.

## I. BACKGROUND[1]

On September 6, 2014, Plaintiff, a home improvement contractor, was present at the scene of a fight at a restaurant. (ECF No. 36-1 ("Pl.'s Reply 7(h)(1) Statement") ¶¶ 1, 7.) After the altercation ended, Plaintiff and an individual named Luis, who was involved in the altercation, entered Plaintiff's work van and drove away. (*Id.* ¶ 15.) Defendant, who was the lead detective investigating the incident, directed a Metropolitan Police Department ("MPD") officer to seize Plaintiff's work van later that evening as potential evidence of a crime. (*Id.*

---

[1] The facts of this case are set out in more detail in the court's March 30, 2017 Memorandum Opinion (ECF No. 38 ("Mem. Op.")).

1

¶¶ 30, 39.)  Pursuant to a warrant stating that Defendant had probable cause to believe the van contained evidence that would assist MPD in identifying and locating the suspect in the altercation, Defendant searched the van, which was by then impounded, on September 23, 2014. (*Id.* ¶¶ 55–56.)  During the search, officers found and removed several items of evidentiary value from the van.  (*Id.* ¶¶ 57, 61.)  MPD retained Plaintiff's van, as well as the items removed from the van, following the search.  (*Id.* ¶¶ 59, 92.)  Plaintiff was never arrested, (*id.* ¶ 89), and nothing in the record indicates that MPD ever located or arrested Luis.

MPD General Order 601.1, which describes procedures for handling seized property, states that, where seized property is classified as evidence but no arrest is made, "the member first taking the property into custody shall be responsible for obtaining a PD Form 81-C from the appropriate prosecuting attorney and delivering it to the Court Property Control Office."  (ECF No. 24-1, Ex. I ("MPD Gen. Order 601.1.") at 26.)  According to the United States Attorney's Office ("USAO"), "MPD determines all dispositions of property that they seize during any investigation," and the USAO "has no authority to dispose of and/or retain property seized.  This authority rests solely with MPD."  (ECF No. 24-1, Ex. B ("Giovanelli Decl.") ¶ 3.)  The MPD officer "makes the decision to release the seized property" and then presents a Form 81-C to a supervisor at the USAO to sign "indicating that the USAO-DC has no objection to that release and that said property is not needed to be retained as evidence."  (*Id.*)  The USAO makes this determination "on a case by case basis."  (*Id.*)  Defendant does not dispute the USAO's characterization of this process but contends that "MPD does not have the authority to release property until the USAO confirms that it no longer needs it for the criminal prosecution."  (Pl.'s Reply 7(h)(1) Statement ¶ 70.)

On March 3, 2015, Plaintiff and Defendant spoke on the phone through an interpreter. (*Id.* ¶ 78.)  During this conversation, Defendant asked Plaintiff for information regarding Luis' identity and location, and asked Plaintiff to come to MPD's Fourth District station.  (*Id.* ¶¶ 79–80.)  When Plaintiff arrived, he was served with a grand jury subpoena issued by the USAO at Defendant's request.  (*Id.* ¶ 80; ECF No. 27-2, Ex. B ("Dailey Dep.") at 96:2–97:6.)  Plaintiff complied with the subpoena by appearing on March 13 and completing an application for the appointment of counsel.  (Pl.'s Reply 7(h)(1) Statement ¶ 81.)  However, he did not testify on that date and was never asked to return.  (*Id.* ¶ 82.)

Assistant U.S. Attorney ("AUSA") Kara Traster took over the case in May 2015.  (ECF No. 33-1 ("Def.'s Reply 7(h)(1) Statement") ¶ 56.)  On August 18, 2015, a paralegal for Plaintiff's counsel spoke to Traster on the phone about recovering Plaintiff's van.  (ECF No. 33-2 ("Pl.'s Resp. to Interrog.") at 12–14.)  Traster "told [the paralegal] that [Plaintiff's] van was being held as evidence in a criminal proceeding" and that she would contact Defendant about the property.  (*Id.* at 13.)

Plaintiff's counsel contacted Defendant in November 2015 to discuss the van's return, and Defendant referred counsel to Traster.  (Pl.'s Reply 7(h)(1) Statement ¶ 85.)  On November 19, 2015, Traster told Defendant that the case was closed and asked that he initiate the process of releasing the van.  (*Id.* ¶ 86.)  On November 26, 2015, Defendant prepared a Form 81-C for release of Plaintiff's van and sent it to the USAO, where it was signed.  (*Id.* ¶ 90.)

On November 27, Defendant, indicating he "had no reason to believe that Plaintiff would return to the police station after his property was released from evidence, given Plaintiff's apparent attitude toward the investigation," asked the USAO to authorize an arrest warrant for Plaintiff.  (*Id.* ¶ 88.)  Traster declined to do so.  (*Id.* ¶ 89.)

On December 10, 2015, Plaintiff filed suit, alleging, in part, that Defendant was liable under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from unreasonable seizures. (ECF No. 1 ("Compl.") ¶ 1.) Almost one month after filing suit, Plaintiff learned that his van was available for release, and he retrieved it on January 13, 2006, approximately eighteen months after MPD initially seized the vehicle. (Pl.'s Reply 7(h)(1) Statement ¶¶ 94, 95.) Plaintiff then filed an amended complaint to account for the receipt of the van. (ECF No. 12 ("First Am. Compl.").)

At the conclusion of discovery, each party moved for summary judgment, and the court held that Defendant violated the Fourth Amendment by maintaining possession of Plaintiff's van for several months after probable cause dissipated.[2] (*See* ECF No. 38 ("Mem. Op.") at 9–19.) The court reasoned that while the initial seizure of the van was lawful, the seizure became unlawful after the van was searched because Defendant lacked probable cause to continue holding the vehicle once all items of evidentiary value were removed and no alleged governmental interests justified the intrusion upon Plaintiff's Fourth Amendment interests. (*Id.*) Focusing on Defendant's initial responsibility for seizing the van and his necessary role in initiating the vehicle's release, the court concluded that Defendant played a sufficient causal role in the unconstitutional seizure to be liable for violating Plaintiff's constitutional rights. (*Id.* at 17.) The court then held Defendant was not entitled to qualified immunity, concluding that a reasonable officer would have known that prolonged seizure of an individual's work van, in the absence of probable cause, was unlawful. (*Id.* at 27–30.)

---

[2] While Plaintiff initially alleged that Defendant violated both his Fourth Amendment and Fifth Amendment rights, Plaintiff later chose not to pursue the Fifth Amendment claim (*see* ECF No. 52 ("Pl.'s Notice Regarding Issues for Trial") at 1), and Defendant challenges only the court's Fourth Amendment finding.

Defendant then filed a motion for reconsideration (ECF No. 40), asserting that a genuine dispute of material fact precluded summary judgment on both issues. Relying on previously unaddressed evidence that Traster had informed a paralegal for Plaintiff's counsel that Plaintiff's van "was being held as evidence in a criminal proceeding," (Pl.'s Resp. to Interrog. at 13), the court found a material dispute of fact over whether staff in the USAO had instructed Defendant to maintain possession of the van to assist the USAO's continued investigation. (ECF No. 47 ("Recons. Order") at 4–6.) On this basis, the court granted Defendant's motion for reconsideration as to qualified immunity. (*Id.*) However, it reaffirmed its previous decision to grant summary judgment for Plaintiff on the issue of Defendant's Fourth Amendment liability because it is "well established that a continued seizure becomes unconstitutional when probable cause for the seizure has dissipated." (*Id.* at 1, 5–6.)

After Plaintiff elected not to pursue his initial Fifth Amendment claim against Defendant, the parties proceeded to prepare for trial on the remaining Fourth Amendment issue—specifically, whether Defendant was entitled to qualified immunity. (ECF No. 52 ("Pl.'s Notice Regarding Issues for Trial") at 1.) Subsequently, Defendant conceded that he would not testify that he received specific instruction from the USAO to hold the van, but would testify that the USAO informed him that the van was being held as evidence for the USAO's criminal investigation. (ECF No. 75 ("Joint Pretrial Statement") at 2.)

One pretrial issue the court resolved was Plaintiff's objection to Defendant's use of Plaintiff's interrogatory response regarding the conversation between AUSA Traster and Plaintiff's counsel's paralegal. (July 16, 2018 Pretrial Conference.) The statement is as follows.

> Additionally, I have been told that . . . Evelyn Núñez, a paralegal at the WLC, . . . successfully reached AUSA Traster by phone . . . AUSA Traster told Ms. Núñez that my van was being held as evidence in a criminal proceeding, but she did not explain why the van was being held or how I could recover it or challenge its

> seizure. Because she was "slammed with cases," AUSA Traster explained that the
> earliest she could reach out to Defendant Dailey about my property was August 31,
> 2015.

(Pl.'s Resp. to Interrog. at 13.) The court agreed with Plaintiff that the interrogatory response

was hearsay within hearsay—in part, because it begins with "I have been told that"—and

expressed skepticism that it could be used as impeachment. (July 16, 2018 Pretrial Conference.)

On July 20, 2018, the court vacated the scheduled trial date and scheduled an evidentiary

hearing to consider evidence regarding Defendant's qualified immunity defense. (July 20, 2018

Min. Order.) After the parties notified the court that they had reached an agreement in principle

to settle the case, the court postponed the evidentiary hearing. (ECF No. 87 ("Joint Notice of

Agreement in Principle"); July 31, 2018 Min. Order.)

Prior to the scheduled evidentiary hearing, the parties reached a settlement and filed a

Joint Stipulation of Dismissal. (ECF No. 91.) The court dismissed the case with prejudice on

August 10, 2018 (ECF No. 93), and granted the parties' joint motion to vacate the evidentiary

hearing (ECF No. 94). The court retained jurisdiction to consider a future motion by Defendant

to vacate the court's summary judgment ruling.

## II.    LEGAL STANDARDS

### A.  Motion to Vacate

Pursuant to Federal Rule of Civil Procedure 60(b), the court, "[o]n motion and just terms,

. . . may relieve a party or its legal representative from a final judgment, order, or proceeding."

Fed. R. Civ. P. 60(b). "Rule 60(b) was intended to preserve the delicate balance between the

sanctity of final judgments . . . and the incessant command of the court's conscience that justice

be done in light of all the facts." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577

(D.C. Cir. 1980) (internal quotation marks and citations omitted). Though the district court is

"vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion," relief must be justified under at least one of six specific enumerated provisions. *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988). The party invoking Rule 60(b) bears "the burden of establishing that its prerequisites are satisfied." *Owens v. Republic of Sudan*, 864 F.3d 751, 819 (D.C. Cir. 2017) (quoting *Gates v. Syrian Arab Republic*, 646 F.3d 1, 5 (D.C. Cir. 2011)). The rule cannot be invoked "simply to rescue a litigant from strategic choices that later turn out to be improvident." *Good Luck Nursing Home*, 636 F.2d at 577*; see also Ackermann v. United States*, 340 U.S. 193, 198 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.").

### B. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In determining whether a genuine dispute of material fact exists, the court must view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "The evidence of the non-movant is to be believed" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The movant must rely on material in the record to demonstrate the absence of any genuinely disputed issues of material fact. Fed. R. Civ. P. 56(a). In response, the nonmoving party must provide his own evidence beyond the pleadings to demonstrate specific facts showing that there is a genuine factual issue for trial. *Celotex Corp.*, 477 U.S. at 324. A fact is material if "a dispute over it might affect the outcome of a suit," and an issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holcomb v. Powell*,

433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Liberty Lobby*, 477 U.S. at 248) (internal quotation marks omitted).

### III.    ANALYSIS

Defendant seeks to vacate the court's original and reconsidered summary judgment decisions, arguing that "record evidence raises factual questions about whether [he] had control over the retention of Plaintiff's van," and therefore calling into question the court's holding that he was responsible for the Fourth Amendment violation.  (Def.'s Vacatur Mot. at 1–2.) Defendant challenges only the court's finding on summary judgment that he was responsible for the unlawful continued seizure of Plaintiff's van.  He does not challenge the court's prior determination that probable cause dissipated once the MPD searched the van and removed items of evidentiary value, given that the van itself no longer had any evidentiary value at that point. (*See* Mem. Op. at 13.)

Defendant's arguments for vacatur do not delineate any specific theory of relief under Rule 60(b).  Although his motion to vacate begins by outlining the basic requirements for relief under Rule 60(b)(1) and Rule 60(b)(6), his subsequent analysis neglects to explain why this case satisfies the requirements for either subsection.  Nevertheless, because Defendant mentions Rule 60(b)(1) and Rule 60(b)(6), the court will assess whether vacatur is warranted pursuant to these two provisions.

### A.  Rule 60(b)(1)

Rule 60(b)(1) allows the court the discretion to grant relief to a party based on "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  "Standing alone, a party's disagreement with a district court's legal reasoning or analysis is rarely, if ever, a basis for relief under Rule 60(b)(1)."  *Munoz v. Bd. of Trs.*, 730 F. Supp. 2d 62, 67 (D.D.C. 2010).

Many federal appellate courts do not permit parties to invoke Rule 60(b)(1) to assert that the district court erred in its legal analysis, reasoning that an appeal is the more appropriate method of challenging alleged legal mistakes by the court.  *See id.* (listing Circuits that have adopted this position); *Ward v. Kennard*, 200 F.R.D. 137, 139 (D.D.C. 2001) (summarizing the posture of various circuits on this issue).   While the D.C. Circuit has "declined to decide whether errors in legal reasoning may be corrected by Rule 60(b)(1) motions," *Computer Prof'ls for Soc. Responsibility v. United States Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996), the case law suggests that the rule applies only when the district court has committed an "'obvious error,' such as basing its legal reasoning on case law that it failed to realize had recently been overturned," *Munoz*, 730 F. Supp. 2d at 67 (citing *D.C. Fed'n of Civic Ass'ns v. Volpe*, 520 F.2d 451, 451–53 (D.C. Cir. 1975)), or "in the very limited situation when the controlling law of the circuit changed between the time of the court's judgment and the Rule 60 motion," *Bestor v. F.B.I.*, 539 F. Supp. 2d 324, 328 (D.D.C. 2008).  *See also Rockefeller ex rel. United States v. Washington TRU Sols., LLC*, 2004 WL 180264 at *1 (D.C. Cir. Jan. 21, 2004) (citing Fifth Circuit decision, which stated "Rule 60(b) relief is not warranted where legal question is arguable rather than an obvious error of law"); *Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 285 (D.D.C. 2016) (denying relief because the movant "ha[d] not identified clear or obvious errors"), *aff'd*, 864 F.3d 751 (D.C. Cir. 2017); *Ward*, 200 F.R.D. at 139 (limiting Rule 60(b)(1)'s application to alleged court error to "the most extreme situations" in which "the district court based its legal reasoning on case law that it had failed to realize had recently been overturned").  Consequently, "relief under Rule 60(b)(1) motions is rare."  *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006).

Rule 60(b)(1)'s general inapplicability to substantive legal errors serves two important functions: (1) the narrow application "avoids eviscerating the much shorter time limitation imposed by Rule 59(e) on motions to 'alter or amend the judgment'"; and (2) "it avoids indirectly extending the appeal period." *Munoz*, 730 F. Supp. 2d at 67 (quoting *Ctr. for Nuclear Responsibility, Inc. v. U.S. Nuclear Regulatory Comm'n*, 781 F.2d 935, 939 (D.C. Cir. 1986)).

Here, Defendant claims he is entitled to vacatur because the court, in its summary judgment and reconsideration decisions, erred in finding that he violated Plaintiff's Fourth Amendment rights as a matter of law. (Def.'s Vacatur Mot. at 1.) Defendant argues there is an "irreconcilable conflict" between this decision and the court's conclusion on reconsideration that there was a material dispute of fact over whether Defendant received instructions from the USAO to maintain possession of Plaintiff's van. (*Id.* at 7.) If the facts would have allowed a reasonable jury to find that the USAO instructed Defendant to hold the van, he reasons, then the same facts necessarily establish a factual dispute over whether he was responsible for the unlawful seizure of the vehicle, thereby precluding summary judgment on Fourth Amendment liability.[3] (*Id.* at 6–8.)

Defendant fails to show that the court committed the type of "obvious error" to which relief under Rule 60(b)(1) is limited. In his motion to vacate, he merely asserts that the court

---

[3] Given its finding that Plaintiff's interrogatory response regarding the paralegal's conversation with AUSA Traster was double hearsay and thus inadmissible as affirmative evidence at trial, (July 16, 2018 Pretrial Conference), the court recognizes the merits of Plaintiff's argument that this evidence should not be considered at this stage. *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (holding that hearsay inadmissible as evidence "counts for nothing" on summary judgment); *Gilmore v. Palestinian Interim Self-Government Auth.*, 53 F. Supp. 3d 191, 201 (D.D.C. 2014) (stating that "it is proper for the Court to rule on the admissibility of hearsay evidence in the context of a motion for summary judgment and to grant the motion if it finds that Plaintiffs' proffered evidence consists only of inadmissible hearsay"). Nevertheless, the court, out of an abundance of caution, will proceed here as if the statement is admissible.

made a substantive error in reasoning.  This is precisely the type of claim that courts in this

district have found insufficient to support vacatur under Rule 60(b)(1).  *Ward*, 200 F.R.D. at 139.

Defendant's motion identifies no recent change in the law that rendered the court's reasoning

erroneous at the time the decision was published, *see Bestor*, 539 F. Supp. 2d at 328, nor any

developments between judgment and the Rule 60(b) motion that would invalidate the court's

prior legal analysis,[4] *see Ward*, 200 F.R.D. at 139.  As such, this case is readily distinguishable

from the "very limited situation" in which Rule 60(b)(1) provides relief for court error.  *Bestor*,

539 F. Supp. 2d at 328.

Even if the D.C. Circuit interpreted Rule 60(b)(1) broadly to permit relief for errors in a

court's legal reasoning, Defendant would not be entitled to vacatur.  Traster's remark regarding

the status of Plaintiff's van was enough to create a genuine dispute of material fact over whether

the USAO instructed Defendant to continue holding the van (thereby potentially implicating the

qualified immunity doctrine).  It was not enough, however, to create a dispute over Defendant's

causal responsibility for the underlying Fourth Amendment violation.[5]

---

[4] While Defendant's motion references *Wesby v. District of Columbia*, 765 F.3d 13 (D.C. Cir. 2014), which the Supreme Court overturned in *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018), this development in the law does not call this court's prior legal analysis into question. In *Wesby*, the Court addressed issues related to probable cause and the "clearly established law" standard in the qualified immunity context, not the principles of causation in the Fourth Amendment seizure context that Defendant challenges here.

[5] The case law supports this distinction.  Courts have consistently analyzed an officer-defendant's "just following orders" defense to a § 1983 action under the second, "clearly established law" prong of the qualified immunity framework, not as a potential barrier to an officer's threshold Fourth Amendment liability.  *See Corrigan v. Glover*, 254 F. Supp. 3d 184, 192–94 (D.D.C. 2017) (assessing whether officer was entitled to qualified immunity for following a superior's order to conduct a warrantless search); *Wesby*, 765 F.3d at 29 (evaluating whether it was reasonable for line officers to rely on a superior's decision to unlawfully arrest plaintiffs), *rev'd on other grounds*, 138 S. Ct. 577 (2018); *Elkins v. District of Columbia*, 690 F.3d 554, 568 (D.C. Cir. 2012) (finding officer was entitled to qualified immunity when her compliance with an order to conduct an unconstitutional search was reasonable).  Other Circuits

The Supreme Court has stated that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 187 (U.S. 1961); *see also Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (noting that "[i]t should be clear . . . that . . . we read § 1983 as recognizing the same causal link" as the common-law link between submission of a complaint and an ensuing arrest). A court in this district has further explained that a defendant must be "personally involved in the decisions affecting the plaintiff's constitutional rights" to incur liability in a § 1983 action. *Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 64 (D.D.C. 2009), *aff'd in part*, 690 F.3d 554 (D.C. Cir. 2012).

The undisputed facts in the record establish that Defendant exercised sufficient control over Plaintiff's seized van to be causally responsible for the Fourth Amendment violation. The evidence shows that Defendant, as the lead detective on the case, had to submit a Form 81-C in order to effectuate the van's release.[6] AUSA Traster's November 19, 2015 e-mail communication to Defendant—which read: "Can you send a PD-81 C to sign off on? Per John Giovannelli, we've closed out the case and the USAO will sign off on releasing the car"— underscores the fact that Defendant's approval was a necessary precondition for releasing

---

have adopted the same approach. *See, e.g.*, *Liu v. Philips*, 234 F.3d 55, 57–58 (1st Cir. 2000) (stating that "officers who reasonably relied on superior officers have been held to be entitled to qualified immunity" in cases where a superior gave an order to perform an unlawful action).

[6] MPD General Order 601.1 states that in cases where seized property is classified as evidence, the officer "first taking the property into custody shall be responsible for obtaining a PD Form 81-C from the appropriate prosecuting attorney and delivering it to the Court Property Control Office." (MPD Gen. Order 601.1 at 26.) According to the USAO, "MPD determines all dispositions of property that they seize during any investigation," and the USAO "has no authority to dispose of and/or retain property seized. This authority rests solely with MPD." (Giovannelli Decl. ¶ 3.) Once the MPD "makes the decision to release the seized property," it presents a Form 81-C for a supervisor at the USAO to sign "indicating that the USAO-DC has no objection to that release and that said property is not needed to be retained as evidence." (*Id.*)

Plaintiff's van. (ECF No. 99 ("Def.'s Reply") at 2.) Given Defendant's essential role in the process, the unreasonably long seizure was a natural consequence of his inaction, even if a jury were to find that the USAO instructed Defendant to continue holding the van.[7] Defendant's conduct therefore satisfied the threshold requirement that an officer be "personally involved in the decisions affecting the plaintiff's constitutional rights." *Elkins*, 610 F. Supp. 2d at 64.

In arguing to the contrary, Defendant mischaracterizes Traster's remarks to the WLC paralegal as a verbal refusal to release the van.[8] (Def.'s Vacatur Mot. at 7.) In the exchange, AUSA Traster only shared information about the vehicle's evidentiary status and said that she would discuss the van with Defendant. Traster's remarks in no way substantiate Defendant's argument, which requires construing the exchange as a verbal refusal by the USAO to sign a property release form submitted by an MPD officer, thereby breaking the causal chain.

Defendant also seeks to introduce, for the first time, language from the MPD website which states that, for seized property classified as evidence, "*the prosecuting attorney will initiate* a 'Property Release' certifying that the property is no longer needed for court and may be returned to the rightful owner." (Def.'s Vacatur Mot. at 10 (emphasis in original).) However, Defendant does not explain why the court should consider this evidence. "It is well-established [that] Rule 60(b) is not designed to help [a] party that has stipulated to certain facts or has not

---

[7] Although Defendant complied with AUSA Traster's November 19, 2015 request by sending a Form 81-C to the USAO the following week, this was the first time he had submitted such a form to the USAO, nearly fourteen months after the van had been searched and probable cause to retain the vehicle had dissipated. (*See* Pl.'s Reply 7(h)(1) Statement ¶¶ 86, 90.) Defendant has presented no evidence that he previously attempted to initiate the release of Plaintiff's van but was overruled by the USAO.

[8] As the court previously recognized, (Mem. Op. at 12 n.5), Defendant's pleadings frequently mischaracterize the substance of pleadings, deposition testimony, evidence, and court proceedings.

presented known facts helpful to its cause when it had the chance" or to grant relief for "ignorance [or] carelessness on the part of a litigant or his attorney." *Munoz*, 730 F. Supp. 2d at 68 (internal quotation marks and citations omitted). Defendant testified at his deposition that he was unaware of any additional rules governing property seized as evidence, (Dailey Dep. at 33:12–22) (answering "[n]ot that I can recall" when asked if he was "aware of any other documents other than [the General Order] that reflect MPD policy regarding seizure of property as evidence"), and he did not suggest that he relied on any additional policies when determining how to proceed with Plaintiff's van. Moreover, Defendant neither avers that this policy was in effect at the time of the seizure, nor suggests that the information on MPD's publicly accessible webpage was unavailable during discovery, which has long been closed in this case. Because Defendant has made no attempt to explain how its failure to produce this information was "excusable neglect" or "mistake" under Rule 60(b)(1), the court will not consider this evidence.[9] *See People for the Ethical Treatment of Animals v. United States*, 226 F. Supp. 3d 39, 54 (D.D.C. 2017).

Defendant's citation to *Pardue v. Glass*, No. 05-5004, 2008 WL 249173 at *1 (W.D. Ark. Jan. 29, 2008), does not alter the court's analysis. In *Pardue*, the court dismissed a § 1983 claim against a police officer who followed his supervisor's order to initially place the plaintiff in a restraining chair. *Id.* at **20, 23–24. The officer-defendant was not involved in keeping the plaintiff restrained in the chair for a prolonged period of time—the action the court found unlawful. *Id.* at **21, 23. Defendant's actions are easily distinguishable from those of the

---

[9] Defendant also fails to show why his delay in producing this new information, which is in the public domain, was not "in control of the movant," which is one equitable factor a court can consider when evaluating "excusable neglect" under Rule 60(b)(1). *People for the Ethical Treatment of Animals*, 226 F. Supp. 3d at 54 (quoting *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006)).

officer in *Pardue*. Unlike that officer, Defendant's involvement in the seizure of Plaintiff's van did not stop after the initial lawful seizure, but continued after the seizure became unlawful, persisting until Defendant submitted the required paperwork to formally initiate the van's release.[10]

*Madewell v. Roberts*, 909 F.2d 1203 (8th Cir. 1990), is similarly unhelpful for Defendant. In *Madewell*, which involved a § 1983 claim by inmates against prison officials, the Eighth Circuit found that "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." 909 F.2d at 1208. The Court affirmed the dismissal of claims against certain officials because they lacked any "personal connection" to the alleged unconstitutional prison conditions, while simultaneously reversing the dismissal of claims against an official who "had personal knowledge" of the prison conditions and officials' actions. *Id.* Here, Defendant cannot credibly claim that he lacked a "personal connection" to, or had no "personal knowledge" of, the prolonged seizure, given his responsibility for initiating the seizure, his continued possession of the van, and his necessary role in returning Plaintiff's van. Because the undisputed facts show that the USAO could not release the van without his participation, Defendant's conduct would satisfy *Madewell*'s "direct responsibility" rule.

In sum, by solely arguing that the court made a substantive legal error in granting summary judgment to Plaintiff on the question of Fourth Amendment liability, Defendant's

---

[10] Statements made by Defendant suggest that he continued the seizure after it became unlawful to compel Plaintiff to assist the MPD in investigating Luis. (*See* Pl.'s Reply 7(h)(1) Statement ¶¶ 86–89 (detailing Defendant's efforts to arrest Plaintiff once Defendant initiated the release of Plaintiff's van because Defendant had no reason to believe that Plaintiff would cooperate with the investigation after the property was returned.)) However, as noted in the March 30, 2017 Memorandum Opinion, seizure of a person's property only as bait or as a bargaining chip to elicit information violates the Fourth Amendment. *See, e.g.*, *Segura v. United States*, 468 U.S. 796, 808 (1984) (noting property seizure requires "probable cause to believe that that property is associated with criminal activity").

theory of relief falls outside the scope of Rule 60(b)(1). Even, assuming arguendo, that this subsection allowed relief for such errors, Defendant has not shown that the court's reasoning was flawed when it found that he violated Plaintiff's Fourth Amendment rights as a matter of law. Accordingly, Defendant is not entitled to vacatur under Rule 60(b)(1).

### B. Rule 60(b)(6)

Rule 60(b)(6) permits the court to relieve a party of a prior judgment "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). While Rule 60(b)(6) is a "catch-all, residual clause," *Twelve John Does*, 841 F.2d at 1140, it "should only be sparingly used," *Good Luck Nursing Home*, 636 F.2d at 577. A movant "must clear a very high bar to obtain relief under Rule 60(b)(6)," *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007), which is "even more rare" than relief under Rule 60(b)(1), *Owens*, 864 F.3d at 818, and requires "a more compelling showing of inequity or hardship" than is necessary under Rule 60(b)'s other subsections, *Twelve John Does*, 841 F.2d at 1140.

The Supreme Court has held that Rule 60(b)(6) justifies granting relief only in "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (quoting *Ackermann*, 340 U.S. at 199); *see also Black v. Tomlinson*, 235 F.R.D. 532, 533 (D.D.C. 2006) (identifying D.C. Circuit case standing for the proposition that a Rule 60(b)(6) reconsideration is appropriate "where the new information presented to the district court was of exceptional import, making the case 'not the ordinary one'") (quoting *Computer Prof'ls*, 72 F.3d at 903). This includes scenarios in which "a previously undisclosed fact so central to the litigation . . . shows the initial judgment to have been manifestly unjust," *Good Luck Nursing Home*, 636 F.2d at 577, where "in hindsight it appears certain that an appeal, which was not taken, would have been

successful," *Kramer*, 481 F.3d at 792 (citing *Ackermann*, 340 U.S. at 197–99), or where there has been an intervening development in the law, *id.* (citing *Gonzalez*, 545 U.S. at 536–38).

Importantly, a Rule 60(b)(6) motion is "not simply an opportunity to reargue facts and theories upon which a court has already ruled." *Black*, 235 F.R.D. at 533 (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). And it cannot be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)," *Jarvis v. Parker*, 13 F. Supp. 3d 74, 80 (D.D.C. 2014) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)), thus rendering Rule 60(b)(6)'s scope "mutually exclusive" and separate from Rule 60(b)'s five other subsections, *Kramer*, 481 F.3d at 792.

Defendant's motion does not specifically explain how Rule 60(b)(6) justifies vacating the court's summary judgment decisions in this case. Instead, it offers three general rationales for granting the relief Defendant seeks: (1) there is a material factual dispute regarding whether Defendant was responsible for the Fourth Amendment violation; (2) the court's summary judgment ruling risks "judicial inconsistency"; and (3) equitable considerations warrant vacatur. (Def.'s Vacatur Mot. at 6–11.)

Defendant's first rationale—that the court erred in finding no material dispute of fact as to his Fourth Amendment liability—fails to satisfy the requirements of Rule 60(b)(6). A charge of legal error falls squarely under subsection (b)(1), and thus cannot serve as a basis for vacatur under Rule 60(b)(6), pursuant to *Kramer*'s "mutually exclusive" rule. 481 F.3d at 792. Moreover, this rationale largely rests on the same arguments Defendant presented in his earlier motion to reconsider the court's prior ruling on his Fourth Amendment liability. (*See* ECF No. 40 ("Def.'s Mot. for Recons.") at 2–6.) As such, this section of his motion attempts to "reargue facts and theories upon which [this] court has previously ruled," which Rule 60(b)(6) does not

reach. *Black*, 235 F.R.D. at 533. And as the Circuit has observed, Rule 60(b)(6) is "not an opportunity for unsuccessful litigants to take a mulligan." *Kramer*, 481 F.3d at 792.

Defendant's second rationale—alleged judicial inconsistency—fails for similar reasons because it is functionally indistinguishable from his allegation of legal error. Defendant explains that the perceived conflicts between the court's summary judgment and reconsideration decisions "rest on a misinterpretation of qualified immunity jurisprudence" and "distort[] the application of qualified immunity." (Def.'s Vacatur Mot. at 8–9.) Specifically, he contends that the court improperly held that Defendant violated Plaintiff's Fourth Amendment rights as a matter of law, because the disputed facts that precluded summary judgment on the reasonableness prong of the qualified immunity analysis are also relevant to the threshold question of whether Defendant caused the Fourth Amendment violation. (*Id.* at 8.) Because it simply reiterates Defendant's argument that the court erred in its legal reasoning, this claim falls outside of the grounds for Rule 60(b)(6) relief. Moreover, Defendant has not identified any case law that suggests the rule can be invoked merely to address perceived inconsistencies in a court's reasoning.

Third, Defendant discusses several "equitable considerations" that purportedly support vacating the summary judgment decisions. (*Id.* at 9–11.) At the outset, Defendant notes that he has "diligently pursued reconsideration of the constitutional issue" since the court's summary judgment decisions. (*Id.* at 10.) While a party's diligence in seeking relief from a judgment is a relevant factor to the court's analysis of a Rule 60(b)(6) motion, *see Gonzalez*, 545 U.S. at 537; *Salazar v. District of Columbia*, 633 F.3d 1110, 1118–19 (D.C. Cir. 2011), it is not dispositive. Thus, the court will consider this factor in the context of any "compelling showing of inequity or hardship" that Defendant offers to determine whether "extraordinary circumstances" exist. *Twelve John Does*, 841 F.2d at 1140–41.

Defendant first offers that "a published opinion finding that he violated the Fourth Amendment . . . will have grave consequences for him personally" by "stunt[ing] his prospects with the Department going forward and foreclos[ing] his ability to work in law-enforcement upon retirement." (Def.'s Vacatur Mot. at 10.) Defendant's primary motivation for seeking to vacate the summary judgment decision is his concern that the court's finding will henceforth require him to respond "yes" to a question on the *Giglio* questionnaire, which includes inquiries about officer misconduct that prosecutors must disclose to defense counsel prior to the officer testifying at a trial. (ECF No. 89 ("Tr. of July 30, 2018, Status Hr'g") at 5:8–18.) Specifically, question 6 of the questionnaire asks: "To your knowledge, has a judge ever found that you made an unlawful arrest, conducted an illegal search or seizure, illegally obtained a confession, or engaged in some other misconduct?" (*Id.* at 5:23–6:2.) Defendant is concerned that the court's judgment will require him to answer this question in the affirmative, which could make it unlikely that he would be used as a witness in future cases. (*Id.* at 6:3–8.)

However, Defendant has not substantiated this alleged harm. As the court noted at the July 30, 2018 status hearing, it is far from certain that Defendant would have to answer "yes" to question 6, because the case was dismissed pursuant to a settlement agreement before the court entered a final judgment determining whether he was entitled to qualified immunity. (*Id.* at 6:11–18, 7:3–5.) And although the court recommended that Defendant research the potential effects of the summary judgment decision on his future answers to *Giglio* questionnaires before submitting a motion to vacate (*see id.* at 6:17–18), Defendant's motion provides no additional clarity on this issue. Nor does it offer any evidence that answering "yes" to question 6 would have the professional consequences Defendant fears. Further, as Plaintiff notes, Defendant has not shown that he has faced any such consequences in the twenty-nine months since the court

issued its initial summary judgment decision. (ECF No. 98 ("Pl.'s Opp'n") at 19.) The court cannot rely on such a speculative and conclusory statement of harm in finding the "compelling showing of . . . hardship" needed to justify vacatur. *Twelve John Does*, 841 F.2d at 1140.

As another equitable consideration, Defendant reasserts that "he had no control over the seizure of Plaintiff's van" from the moment the USAO decided to convene a grand jury to pursue charges against Luis. (Def.'s Vacatur Mot. at 9–10.) To support this claim, he offers the MPD webpage, discussed above, which states that property classified as evidence "is generally held until the conclusion of any pending court action" and that "*the prosecuting attorney will initiate a 'Property Release' certifying that the property is no longer needed for court and may be returned to the rightful owner.*" (*Id.* at 9) (emphasis in original).

Rule 60(b)(6) requires that a "previously undisclosed fact" be "so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home*, 636 F.2d at 577. Here, the new information Defendant presents fails to meet this threshold. First, the MPD webpage text does not establish a material factual dispute regarding Defendant's responsibility for the continued seizure, and thus falls short of demonstrating that the court's summary judgment decision was "manifestly unjust." The November 19, 2015 e-mail from Traster to Defendant, the language in MPD General Order 601.1, and John Giovanelli's declaration all confirm that an MPD officer must begin the formal process of releasing seized property by submitting a Form 81-C to the USAO. Secondly, Defendant has not shown that he relied on or was even aware of the webpage provision at the time he retained possession of Plaintiff's van. To the contrary, Defendant admitted in his deposition testimony that he was unaware of any policies governing the disposition of seized property outside of General Order 601.1. (Dailey Dep. at 32:21–33:22.) And from the limited information provided by Defendant,

it is impossible to determine if this language was even published on the MPD webpage while Plaintiff's property remained seized.

Defendant also claims that "the opinion also has repercussions that go beyond Detective Dailey," because "the primary goal of this litigation was not to secure a money judgment for Plaintiff, but to obtain a judicial opinion declaring a constitutional violation that would serve an agenda far removed from this particular case."  (Def.'s Vacatur Mot. at 10.)  Defendant makes no attempt to cite specific authority that suggests a party's litigation motives qualify as an "extraordinary circumstance" for which Rule 60(b)(6) relief is appropriate.  And if officers' conduct can constitute an unlawful search even when conducted pursuant to a superior's orders, *see Corrigan v. Glover*, 254 F. Supp. 3d 184, 192–94 (D.D.C. 2017), it is not inequitable for the court to reach the same conclusion in the seizure context, particularly because officers may still avoid ultimate liability by showing that they are entitled to qualified immunity.

Lastly, Defendant contends that the record in this case "is in tension" with the Supreme Court's directive in *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018), "that a Court should consider, and where appropriate credit, *all* of the facts in the record when determining the existence of a Fourth Amendment Violation."  (Def.'s Vacatur Mot. at 11 (emphasis in original).)  His claim that "[this] Court itself has recognized" such a tension misconstrues the court's previous statements.  (*Id.* at 11.)  When the court observed that "we've just seen a Supreme Court ruling on a case of police immunity . . . I don't think the record is great either way," it was not suggesting that the Supreme Court's *Wesby* decision was inconsistent with this court's reasoning in the present case.  (ECF No. 69 ("Feb. 14, 2018, Hr'g Tr.") at 6:1–3.)  Rather, the court presented *Wesby*—in which the Supreme Court reversed the D.C. Circuit's denial of qualified immunity—as an example of the risks that both Plaintiff and Defendant would

face if they continued to litigate the question of qualified immunity.  The court's later comment that "[g]oing to trial in this case is going to be risky for both sides" reiterated this point.  (ECF No. 83 ("May 31, 2018, Hr'g Tr.") at 34:20–21.)  The court in no way suggested any conflict between the record in the present case and the Supreme Court's holding in *Wesby*, as Defendant claims.

In sum, despite his diligence in seeking reconsideration of the court's initial summary judgment opinion and subsequent order, Defendant has not met his burden of demonstrating the "extraordinary circumstances" necessary to obtain relief under Rule 60(b)(6).  Therefore, he is not entitled to vacatur on these grounds.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to vacate the court's initial and reconsidered summary judgment decisions is hereby DENIED.

A corresponding order will issue separately.

Date:  September 11, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge